Clyde C. Greco, Jr., Esquire, State Bar No. 085970
Peter J. Schulz, Esquire, State Bar No. 167646
Jon S. Brick, Esquire, State Bar No. 120474
LAW OFFICES
**GRECO TRAFICANTE SCHULZ & BRICK**
185 WEST F STREET - SUITE 400
SAN DIEGO, CALIFORNIA 92101
(619) 234-3660 / FAX: 234-0626

Attorneys for Plaintiff FREDERICK MEISWINKEL, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK MEISWINKEL, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,<br><br>Defendants. | Case No. 3:07-cv-05064 WHA<br><br>**DECLARATION OF JON S. BRICK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO NATIONAL FIRE INSURANCE COMPANY OF HARTFORD'S MOTION TO STAY PROCEEDINGS**<br><br>Date:        March 20, 2008<br>Time:       8:00 a.m.<br>Courtroom: 9<br>Judge:      William Alsup |

I, JON S. BRICK, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts in the state of California, and am a partner of the law firm of Greco Traficante Schulz & Brick, attorneys of record for Plaintiff FREDERICK MEISWINKEL, INC. I have personal knowledge of all matters set forth in my Declaration and if called upon to do so, could and would competently testify thereto.

2. The underlying action to this coverage matter is a construction defect case involving a 233-unit condominium complex pending in the San Francisco Superior Court.

1 | There were three original actions arising from the construction of the condominiums which have been consolidated in a single action, entitled <u>88 King Street, LLC v. Frederick Meiswinkel, Inc.</u>; San Francisco Superior Court Case No. CGC04-42955. FMI was insured under three policies of insurance issued by Transcontinental Insurance Company, now NATIONAL FIRE INSURANCE COMPANY OF HARTFORD ("National"), for the periods January 1998 through January 2001. Defense of the underlying actions was tendered to National pursuant to these policies and, in August of 2004, National agreed to defend FMI by retaining the services of attorney Geoff Wood of the firm of Morton Lulofs & Wood.

3. In July of 2006, however, the attorney retained by National notified its claims handler, James Teater, of problems associated with National's refusal to pay for the reasonable and authorized attorneys' fees incurred in the defense of FMI. A true and correct copy of attorney Wood's July 13, 2006 letter is attached hereto as Exhibit "1."

4. As the result of CNA's wrongful refusal to defend its insured, FMI retained our law firm to protect its interests. Under the threat of litigation, National ultimately agreed, along with one of FMI's other insurers, Zurich North America, to jointly retain the services of the law firm of Burnham & Brown to continue with FMI's defense.

5. A true and correct copy of our letter dated July 20, 2006 to National is attached hereto as Exhibit "2." A true and correct of our August 14, 2006 letter is attached hereto as Exhibit "3."

6. On or about August 18, 2006, we were notified that Mr. Teater of National agreed to allow the law firm of Burnham & Brown to replace prior panel counsel, McCarthy & McCarthy.

7. Notwithstanding this agreement, National continued its pattern of practice of refusing to pay for its share of reasonably incurred defense fees, delayed payment of invoices, and engaged in other conduct establishing its failure to provide a full and complete defense. It became clear that its efforts were more geared towards finding a way out of coverage than in defending its insured, FMI.

8. On July 10, 2007, National informed FMI that it was unilaterally withdrawing

its defense, effective on a mere 15 days' notice. A true and correct copy of Mr. Teater's July 10, 2007 letter is attached hereto as Exhibit "4." Upon receipt of this decision to wrongfully withdraw from the defense of its insured, FMI once again enlisted the services of our firm to attempt to compel National to abide by its contractual terms and comply with California law. A series of letters were exchanged leading up to the filing of this litigation. These letters evidence the continued refusal on the part of National to investigate the claim and provide its insured with a defense.

    A.    A true and correct copy of our July 17, 2007 letter to CNA [National] is attached hereto as Exhibit "5."

    B.    A true and correct copy of our July 19, 2007 letter to Mr. Teater is attached hereto as Exhibit "6."

    C.    A true and correct copy of Mr. Teater's July 19, 2007 letter is attached hereto as Exhibit "7."

    D.    A true and correct copy of Mr. Teater's July 23, 2007 letter is attached hereto as Exhibit "8."

    E.    A true and correct copy of our August 14, 2007 letter to Mr. Teater is attached hereto as Exhibit "9."

    F.    A true and correct copy of Mr. Teater's August 15, 2007 letter is attached hereto as Exhibit "10."

    G.    A true and correct copy of Mr. Teater's August 23, 2007 letter is attached hereto as Exhibit "11."

    H.    A true and correct copy of our letter dated August 24, 2007 enclosing the Summons and Complaint is attached hereto as Exhibit "12."

9. As evidenced by this correspondence, FMI repeatedly provided CNA [National] with sufficient evidence to establish a duty to defend. National refused to engage in any type of investigation on behalf of its insured, and continued to deny a defense to FMI.

10. On December 19, 2007, we provided counsel for National with even further evidence of National's obligation to defend. A true and correct copy of our December 19,

2007 letter along with evidentiary support is attached hereto as Exhibit "13."

11. During the course of this litigation, at least three mediations were held in the underlying litigation, held on August 1, 2007, October 25, 2007 and January 18, 2008. National failed to have a claims representative present at these mediations, and refused to offer any money towards the settlement – relying on its decision to deny a defense. The failure of National to appear for mediation has had a chilling effect on the settlement process for several reasons. First, National was not at the mediation with any money to contribute towards settlement. Second, the refusal on the part of National to participate provided the excess carrier over National's primary coverage a very simple and easy response to our demand that it contribute towards a settlement. That is, the excess carrier obviously will not contribute until such time as the primary carrier has exhausted.

12. This Court should be aware of the fact that the underlying action seeks in excess of $28 million dollars, and the most recent demand to FMI was $2 million.

13. As of the date of this Declaration, FMI has incurred in excess of $85,000 in attorneys' fees and costs as the result of the above-described bad faith conduct.

I declare under penalty of perjury, under the laws of the state of California, that the foregoing is true and correct.

Executed this 6th day of March, 2008, at San Diego, California.

By: _____
Jon S. Brick, Esq., Declarant

MEI-002\Opp to Motion to Stay Decl JSB 030608            -4-

DECLARATION OF JON S. BRICK IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO STAY PROCEEDINGS