EXHIBIT "1"

# Morton, Lulofs & Wood, LLP

William R. Morton
Larry E. Lulofs
G. Geoffrey Wood

*Of Counsel*
David M. Miller
Karen D. Marcus
Kelly C. Levy
Christopher J. Hogan

7041 Koll Center Parkway, Suite 275
Pleasanton, California 94566-3128
Tel: 925.426.9500 / Fax: 925.426.9501
Writer's E-mail: arlene@mlwlaw.com

*Oakland Office:*
180 Grand Avenue, Suite 1500
Oakland, CA 94612-3702
Telephone: 510.444.5521

Please reply to:
**Pleasanton Office**

July 13, 2006

***Via Email and U.S. Mail***

James Teater
CNA INSURANCE COMPANIES
675 Placentia Avenue, Suite 200
Brea, CA 92821

Re:  *88 King Street LLC v. Frederick Meiswinkel, Inc.*
San Francisco Superior Court Action No.: CGC-04-434587
Your Insured:        Frederick Meiswinkel, Inc. ("FMI")
CNA Claim No:     DA 006283 AL
MLW File No:      CNA.657.ggw

Dear Mr. Teater:

This letter is to advise you that CNA's Litigation Management Unit ("LMU") has chosen not to honor your specific authorization to have my associate, Kelly Levy, prepare an annotated chronology of the above-referenced case.  Our agreement, confirmed in telephone conversations and memorialized by email and letters was that Ms. Levy would review the parties' documents (in particular the 39 bankers boxes of SCB, the project architect), determine which documents were relevant to the defense of FMI, obtain copies, analyze the documents, and update the annotated chronology of the case[1].  A specific term of our agreement was that Ms. Levy's review, selection, analysis, and updating of the chronology was authorized for payment as an attorney.  As you know, Ms. Levy's annotated chronologies have been of significant value in this and other CNA cases, saving considerable time preparing for and attending depositions, mediation, and trial.  Despite our agreement I received today two Visibillity System Alerts advising me that on the recently submitted invoices, numbers 8302 and 8323, CNA will pay **none** of the $7,032.50 in charges billed by

---

[1]    The annotated chronology was started using FMI's own job files and plans under similar authorization by my predecessor Jack Lewis.  LMU has also chosen to reject Mr. Lewis' authorizations for Ms. Kelly's work reflected in MLW's invoices generated during his tenure but due to a backlog have only recently been reviewed by LMU for payment.

EXHIBIT 1

James Teater                                          July 13, 2006
CNA Insurance Companies                                    Page 2

Ms. Levy for her authorized work.[2]

In light of LMU's breach of our agreement regarding Ms. Levy's work on this file neither I nor my firm can continue working as retained insurance defense counsel on behalf of FMI. Please assign new counsel immediately and direct new counsel to contact me without delay so that we may execute the substitution of attorneys documentation required to complete my transfer from this case. It is important that the substitution occur immediately so as not to prejudice your insured's rights in this case.

Furthermore, please consider this letter a formal demand to CNA for payment of the entire outstanding balance due me and my firm for legal services billed to date on this file. According to our records the amount due is **$38,796.80** through 6/30/06. Payment is to be made on or before August 14, 2006. There will be charges for legal services and fees rendered during the month of July 2006 and for the transfer of the file, which is voluminous, to new counsel. Of course, if there is someone other than yourself to whom this demand must be made, please let me know at once.

Please have your new counsel contact me so the file materials can be transferred efficiently and in an orderly manner. Our goal is to make the transfer of the file as seamless as possible, while still providing for the continued defense of FMI. Please contact me with any questions.

Very truly yours,

MORTON, LULOFS & WOOD, LLP

G. GEOFFREY WOOD

ggw/nk
cc:    Lillian Rober, LMU Director (*via email only*)
       Patricia Walsh, Esq. (FMI's counsel) (*via email only*)
       Michael Cochrane, Esq. (MLW's counsel) (*via email only*)

S:\CONSTR\88KING\Correspondence\Carrier\teater.07 13 06.ggw mc.wpd

---

[2]    Each of her time entries in these invoices specifically stated the work was authorized by you as an attorney.

# EXHIBIT "2"

Clyde C. Greco, Jr.
Paul A. Traficante
Peter J. Schulz
Jon S. Brick
Bay Baniadam
Laleaque Grad*
Julianne Mizer

*Also Admitted in Arizona & Nevada

Law Offices
GRECO & TRAFICANTE
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California 92101

Northern California Office
9555 Crossroads Drive
Redding, California 96003

Of Counsel
Stanley J. Wezelman

Legal Administrator
Melanie Geschwind

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

July 20, 2006

**Via E-Mail & U.S. Mail**

James Teater
CNA Insurance Company
675 Placentia Avenue, Suite 200
Brea, CA 92821

Re:  **88 King Street, LLC v. Frederick Meiswinkel, Inc.**
     **San Francisco Superior Action No. : CGC-04-434587**
     **Your Insured      :    Frederick Meiswinkel, Inc.**
     **CNA Claim No.     :    DA 006283AL**
     **Our File No.      :    MEI-002**

Dear Mr. Teater:

The undersigned law firm serves as coverage counsel to Frederick Meiswinkel, Inc., in association with Janette Leonidou of Leonidou & Rosin.

We are writing to address some concerns we have regarding the defense being provided by Transcontinental/CNA in the above-referenced litigation. In particular, we understand CNA has repeatedly failed to pay for the attorney assigned to defend FMI, and has been limiting the defense through its Litigation Management Unit. We also understand that as a result of CNA's limitations and failure to pay, the attorney retained by CNA to represent FMI has elected to withdraw from the defense (after over two years of representation in that litigation).

Based upon our initial review of the materials we have been provided, it appears that the nonpayment of attorneys' fees is entirely unsupported by CNA's own billing guidelines, and is instead a function of CNA taking its direction from its Litigation

F:\Meiswinkel\MEI-002\Correspondence\Teater 071906.wpd

EXHIBIT 2

Greco & Traficante

James Teater
CNA Insurance Company
July 20, 2006
Page 2

Management Unit.  The net result is that CNA has not only acted in bad faith toward its insured by breaching its defense obligation, but is likely to have committed the unauthorized practice of law by exercising inappropriate control of defense counsel through nonpayment of fees.

The implications of CNA's breach, and resulting prejudice to FMI have not yet been fully determined.  We do know that CNA's improper conduct has prejudiced FMI's defense from a tactical standpoint, including, but not limited to, defense counsel's inability to complete a review of the architect's file prior to its production in the litigation. We are also informed that there may now be problems with the retained experts as the result of CNA's non-payment of their fees.

We understand that Mr. Wood has officially withdrawn from representation, and that CNA has appointed McCarthy & McCarthy to assume responsibility for FMI's defense.  We also understand that FMI's personal counsel, Patricia Walsh, contacted you on July 18, 2006, objecting to CNA's decision to hire the McCarthy firm.  This letter will confirm that FMI objects to the use of McCarthy & McCarthy, and requests that independent counsel be assigned in accordance with the provision of Section 2860 of the California Civil Code.  Insofar as the McCarthy firm is concerned, we feel there is too close a relationship between McCarthy and CNA such that FMI will not receive a full and complete defense.

It is well established that if an insurer undertakes the defense of a third party lawsuit against its insured, it must employ *competent counsel* to represent the insured, and provide such counsel with *adequate funds* to defend the suit against the insured.  Merritt v. Reserve Insurance Company (1973) 45 Cal. App. 3rd 858, 882.

The counsel selected and hired by the insurer must be competent to defend the *particular* matter at issue.  See, Travelers Insurance Company v. Lesher (1986) 187 Cal. App. 3rd 169.  It has also been held that the failure to provide competent counsel breaches the implied covenant of good faith and fair dealing, even when the insurer disputes coverage and is defending under a reservation of rights.  Travelers Insurance Company v. Lesher, supra, 187 Cal. App. 3rd at page 186.

Greco & Traficante

James Teater
CNA Insurance Company
July 20, 2006
Page 3


    California law also requires that the insurer provide its attorneys with sufficient funds to conduct the defense.  See, <u>Aerojet General Corporation v. Transport Indemnity Company</u> (1997) 17 Cal. 4th 38, 58.  As commented in the <u>Rutter Group Practice Guide for California Insurance Litigation</u>, problems may arise where the insurer insists on "skimping" on the defense, and refuses to pay for services recommended by defense counsel.  This is especially true where the carrier has reserved rights, or if there is risk of an excess judgment.  Under those circumstances, the carrier's failure to fund the defense properly may be actionable either as a breach of its contractual duty to defend or as a breach of its implied covenant of good faith and fair dealing with the insured.  In either case, the insured's liability for the uncovered claim or the excess judgment may be regarded as a consequential damage under such circumstances.

    Based upon the foregoing, we respectfully request that you allow for independent counsel, or at least consult with the Leonidou firm concerning your choice of defense counsel, and obtain that firm's approval of appointed counsel.  We also insist that Mr. Wood and all experts be paid in full for services rendered to date.  Please advise us of your position with respect to the foregoing.

    Reserving all rights, and waiving none, I remain


        Very truly yours,



        Clyde C. Greco, Jr.
        Of
        GRECO & TRAFICANTE

PJS:aml
cc:    Rudy Meiswinkel, President
       Peter J. Schulz, Esq.

# EXHIBIT "3"

Clyde C. Greco, Jr.
Paul A. Traficante
Peter J. Schulz
Jon S. Brick
Bay Baniadam
Laleaque Grad*
Julianne Mizer

*Also Admitted in Arizona & Nevada

Law Offices
GRECO & TRAFICANTE
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California 92101

———————————

Northern California Office
9555 Crossroads Drive
Redding, California 96003

Of Counsel
Stanley J. Wezelman

Legal Administrator
Melanie V. Geschwind

———————————

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

August 14, 2006

***<u>Via E-Mail and U.S. Mail</u>***
James Teater
CNA Insurance Company
675 Placentia Avenue, Suite 200
Brea, CA 92821

Re:    <u>88 King Street, LLC v. Frederick Meiswinkel, Inc.</u>
       **San Francisco Superior Action No. : CGC-04-434587**
       **Your Insured**      :    **Frederick Meiswinkel, Inc.**
       **CNA Claim No.**     :    **DA 006283AL**
       **Our File No.**      :    **MEI-002**

Dear Mr. Teater:

As you may recall, the undersigned law firm serves as coverage counsel to Frederick Meiswinkel, Inc., in association with Janette Leonidou of Leonidou & Rosin.

On July 20, 2006, we wrote to you addressing our concerns regarding CNA's handling of Frederick Meiswinkel, Inc.'s defense in the above-referenced litigation. While we have not yet received a response to our letter, we have continued to monitor CNA's handling of Frederick Meiswinkel, Inc.'s defense and our concerns are growing stronger by the day.

By way of background, CNA's failure to properly defend its insured has resulted in the withdrawal of CNA's retained defense counsel, Geoff Wood. While this, in and of itself, is a breach of your duty to defend, which has resulted in prejudice to FMI's defense in this litigation, we understand that CNA has now appointed McCarthy & McCarthy to assume responsibility for FMI's defense. On July 18, 2006, FMI's personal counsel, Patricia Walsh, contacted you, objecting to your decision to hire the McCarthy firm. It is a given that the McCarthy firm has not, in the past, provided a proper defense to FMI, and your insured does not want to repeat that failure. FMI's position in the aforesaid regard was confirmed in our letter of July 20, 2006, wherein we also requested that independent

F:\Meiswinkel\MEI-002\Correspondence\Teater 8-8-06 - PJS.wpd



**Greco & Traficante**

James Teater
CNA Insurance Company
August 14, 2006
Page 2

counsel be assigned in accordance with provisions of Section 2860 of the California Civil Code. Subsequently, and on July 22, 2006, Ms. Walsh requested that Mr. McCarthy confirm that he had no conflict of interest, given his representation of another subcontractor in the very same litigation. A copy of Ms. Walsh's July 22 letter is enclosed for your ready reference.

Instead of honoring his ethical obligation to deal with this potential conflict of interest, Mr. McCarthy proceeded to obtain our client's entire file and has communicated directly with the client without contacting FMI's personal counsel. Indeed, notwithstanding the objection of FMI and its personal counsel, Mr. McCarthy obtained a substitution of attorney which the client has now signed. This was done without the client's prior knowleged that Mr. McCarthy had failed to disclose his conflicts of interest.

Based on the foregoing, we once again renew our demand for independent counsel pursuant to Section 2860 of the California Civil Code. Moreover, we insist that Mr. McCarthy provide a proper conflict of interest disclosure as requested by FMI's personal counsel. Finally, if Mr. McCarthy refuses to provide this disclosure, or, continues to communicate directly with the client without going through Ms. Walsh's firm, or continues to favor CNA to the detriment of FMI (as we expect he will), we will have no choice but to take further action against CNA and Mr. McCarthy and his firm. Given all of the foregoing, we demand that Mr. McCarthy withdraw and that competent, and neutral, counsel be appointed for FMI. We are, quite frankly, unwilling to allow FMI to be represented by one of CNA's pawns.

Very truly yours,

Clyde C. Greco, Jr.
Of
GRECO & TRAFICANTE

CCG:PJS:cr:mvg
Enclosure
cc:     Patricia Walsh, Esquire (via facsimile)
        Laleaque Grad, Esquire

# EXHIBIT "4"




675 N. Placentia Avenue, 3rd Floor
Brea, California 92822-2469

James Teater
Claim Consultant
Construction Defect Claims
714-255-2652
800-262-8714
714-256-7657 (fax)

July 10, 2007

Rudy Meiswinkel
Frederick Meiswinkel, Inc.
2060 Newcomb Avenue
San Francisco, CA 94124

Re:    Our Insured:      Frederick Meiswinkel, Inc.
       Our Claim No:     DA006283 IC
       Claimant:         88 King St., LLC
       Case Nos.:        CGC04429455, CGC04434587, CGC05441207
       Policy No.:       TCP 1035653041
       Effective:        1-1-98 to 1-1-99; 1-1-99 to 1-1-00; and 1-1-00 to 1-1-01
       Company:          Transcontinental Insurance Company
       Case Title:       88 King St., LLC v. Dillingham Construction

Dear Mr. Meiswinkel:

Transcontinental Insurance Company has been defending Frederick Meiswinkel, Inc. with respect to the action of 88 King St, LLC v. Dillingham Construction, et al.; subject to Transcontinental's reservation of rights letter dated July 2, 2003.

This matter involves the One Embarcadero South project located at 88 King Street, in San Francisco, CA and was constructed pursuant to a subcontract agreement dated September 1, 1997 between Frederick Meiswinkel, Inc. and Nielsen Dillingham Builders. Our insured finished its work in May, 2000 and the project was completed on June 28, 2000. One Embarcadero South was sold during construction to 88 King Street LLC and converted into condominiums in September, 2000.

We have recently discovered information which affects our earlier coverage determination with respect to providing a defense to the named insured, Frederick Meiswinkel, Inc. According to the complaint filed on September 10, 2004, minor water leaks were discovered in March, 2002 and no defects or damages were discovered earlier than that time. Further investigation revealed expert reports detailing waterproofing issues discovered in 2002.

Unfortunately, based on the facts above, there is no coverage under Transcontinental Insurance Companies three policy years for Frederick Meiswinkel, Inc. according to the reasons explained below. Pursuant to the complaint, damages caused by water intrusion were first discovered in March, 2002 over a year after the last Transcontinental policy had expired on 1-1-01. We refer to the policies and endorsements potentially applicable to this loss.

The Known and Continuing Loss, form no. G121635A 1/96 ed., was endorsed on all three Transcontinental policy years effective from 1-1-98 to 1-1-99, 1-1-99 to 1-1-00 and 1-1-00 to 1-1-01. This form reads as follows:



EXHIBIT        4

7/10/2007
2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – KNOWN AND CONTINUING LOSSES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The following is added to **2.** Exclusions of COVERAGE **A** (Section **I** – Coverages):

This insurance does not apply to and we have no duty to defend any claim or "suit" seeking damages because of "bodily injury" or "property damage" that is continuous or progressively deteriorating and which "manifested" prior to the inception or after the expiration of the policy period;

**2.** The following is added to **1.** Insuring Agreement of COVERAGE **A** (Section **I** – Coverages):

All claims and "suits" for "bodily injury" or "property damage" that is continuous or progressively deteriorating and which "manifests" during this policy period will be deemed to apply only to this policy period and no other policy period.

**3.** The following definition is added to DEFINITIONS (Section **V**):

"Manifest(ed)" means:

    **a.** For "bodily injury" when injury, sickness or disease first becomes reasonably capable of medical diagnosis; and

    **b.** For "property damage" when the damage is first discovered by the person or organization who suffered such damage.

**4.** The following is added to paragraph **1.b.** of COVERAGE **B** (Section **I** – Coverages):

All claims or "suits" for "personal injury" or "advertising injury" caused by an offense committed during this policy period will be deemed to apply only to this policy period and no other policy period.

Based on the fact that the damages manifested prior to the inception or after the expiration of the Transcontinental policy, there is no potential for an "occurrence" of bodily injury or property damage during the Transcontinental Insurance Company policy periods. The Transcontinental Insurance Company policy provided coverage only for "property damage" caused by an "occurrence" which occurs during the policy period. Since damages caused by water intrusion first manifested after the expiration of the Transcontinental policy periods, we see no further duty to defend or indemnify Frederick Meiswinkel, Inc. for this claim. Transcontinental's participation in the defense of this matter will end fifteen (15) days from the date of this letter. Also, and as you are aware, Zurich North America has a defense obligation and is currently defending your company for this claim.

The policies are subject to Coverage Form CG0001 (ed. 11/88). Please note that the preamble of the CG0001 coverage form states that "you" and "your" refer to the named insured. The Insuring Agreement, under Section 1, states:

7/10/2007
3

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement.

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

We also include for your review policy definitions pertaining to this claim:

### SECTION V – DEFINITIONS

When used in the policy (including endorsements) forming a part hereof:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**9.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**10.** "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

7/10/2007
4

   e. Oral or written publication of material that violates a person's right of privacy.

 12. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The following are some exclusions which may also serve to prevent coverage for some damages claimed:

 **2. Exclusions.**

 This insurance does not apply to:

   a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

     (1) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

     (2) That the insured would have in the absence of the contract or agreement.

   j. "Property damage" to:

     (1) Property you own, rent, or occupy;

     5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

     (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   Paragraph (6) of this exclusion does not apply to "property damage" included in the "products- completed operations hazard."

The policy defines "products-completed operations hazard" as:

   11. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     (1) Products that are still in your physical possession; or

7/10/2007
5

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classfication in this Coverage Part or in our manual of rules includes products or completed operations.

Other pertinent exclusions include:

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

7/10/2007
6

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product;"

(2) "Your work;" or

(3) "Impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The policy defines "impaired property," "your product," and "your work" as:

5. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

b. Your fulfilling the terms of the contract or agreement.

14. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b. The providing of or failure to provide warnings or instructions.

7/10/2007
7

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**15.** "Your work" means:

    **a.** Work or operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

    **b.** The providing of or failure to provide warnings or instructions.

As indicated above, we see no further duty to continue to defend or indemnify Frederick Meiswinkel, Inc. for this matter based upon the fact that damages first manifested after the expiration of the Transcontinental policy periods. At this time, our investigation of the policy and claim file materials represents current information in our possession. Should you have documentation to the contrary, please advise us.

Transcontinental Insurance Company reserves all of its rights and obligations under the policy, including the right to amend, add to, or change its coverage determination based on additional information discovered during our investigation of this matter. Our investigation does not waive or change the policy's terms, and does not waive our right to dispute issues of coverage. Nor does our participation require us to make any settlement offers or satisfy any judgments on behalf of Frederick Meiswinkel, Inc. We also reserve the right to seek reimbursement from Frederick Meiswinkel, Inc. of all of its attorney's fees and costs we incur in defending these claims.

Should you have any comments, questions or disagree with our coverage position, please feel free to contact me directly. If you have any additional documentation that you feel would alter our decision, please provide it immediately and we will be happy to reconsider this denial of coverage under the policy.

You may also have this decision reviewed by the California Department of Insurance. They may be reached at: California Department of Insurance, Consumer Services Division, 300 S. Spring St., Los Angeles, CA 90013, (800) 927-4357.

Sincerely,

James A. Teater
Transcontinental Insurance Company

cc:
Ms. Casey Long
Senior Claims Specialist
Zurich North America
Specialty Claims
PO Box 66965
Chicago, IL 60666-0965

EXHIBIT "5"

Clyde C. Greco, Jr.
Paul A. Traficante
Peter J. Schulz
Jon S. Brick
Laleaque Grad*
Julianne Mizer

*Also Admitted in Arizona & Nevada

Law Offices
GRECO & TRAFICANTE
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California 92101

Northern California Office
9555 Crossroads Drive
Redding, California 96003

Of Counsel
Stanley J. Wezelman

Legal Administrator
Melanie V. Geschwind

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

July 17, 2007

*Via Facsimile and U.S. Mail*

James Teater
Claim Consultant
Construction Defect Claims
Transcontinental Insurance Company
675 Placentia Avenue, Suite 200
Brea, CA 92821

Re:    **88 King Street, LLC v. Frederick Meiswinkel, Inc.**
       Case Nos.       : CGC04429455, CGC04434587, CGC05441207
       Your Insured    : Frederick Meiswinkel, Inc.
       CNA Claim No. : DA006283 IC
       Our File No.    : MEI-002

Dear Mr. Teater:

    As you know, the undersigned serves as coverage litigation counsel to Frederick Meiswinkel, Inc. ("FMI") in connection with the above-referenced matter. We are in receipt of your letter dated July 10, 2007 where you, without proper justification, withdraw from defending your insured and decline to provide coverage in the above-referenced litigation. The sole basis for your withdrawal from coverage is the following statement:

         We have recently discovered information which affects our earlier coverage determination with respect to providing a defense to the named insured, Frederick Meiswinkel, Inc. According to the Complaint filed on September 10, 2004, minor water leaks were discovered in March, 2002 and no defects or damages were discovered earlier than that time. Further investigation revealed expert reports detailing waterproofing issues discovered in 2002. [¶] Unfortunately,

EXHIBIT 5

# Greco & Traficante

James Teater
July 17, 2007
Page 2

> based on the facts above, there is no coverage under
> Transcontinental Insurance Companies [*sic*] three policy
> years for Frederick Meiswinkel, Inc. according to the reasons
> explained below. Pursuant to the Complaint, damages caused
> by water intrusion were first discovered in March, 2002 over
> a year after the last Transcontinental policy had expired on
> 1/1/01 ...

Section 790.03(h)(13) of the California Insurance Code requires a carrier to explain, in full and complete detail, citing to applicable law and facts, its decision to deny coverage. Here, your letter fails to even remotely comply with the aforesaid requirement. It simply sets forth conclusory statements concerning the date in which certain leaks were *discovered*. Moreover, where, as in this case, an insurance carrier initially agrees to defend, it may not withdraw the defense unless it can establish "by reference to undisputed facts, that the claim cannot be covered." See Ringler Associates, Inc. v. Maryland Cas Co., 80Cal.App.4th 1165, 1186 (2000). Moreover, in a case such as this one, the insurance carrier is required to seek a judicial determination that there is absolutely no potential for coverage before withdrawing the defense. In that regard, please carefully review the judicial decision in Atlantic Mutual Insurance Company v. J. Lamb, Inc., 100Cal.App.4th 1017, 1040-1042 (2002). Further, considerable caution is warranted where a carrier is purported to precipitously withdraw a defense in the 9th Circuit. In that regard, you would be well advised to review the decision in Travelers Indemnity of Illinois v. INA, 886 F.Supp. 1520, 1525 (SD Cal. 1995) (holding that a carrier may not withdraw the defense with impunity unless it first files a declaratory relief action and obtains an adjudication that there is absolutely no potential for coverage). Here, you have obtained no judicial determination allowing Transcontinental to withdraw, which failure constitutes blatant bad faith.

With the foregoing in mind, please provide us with all evidence that you have relied upon to conclusively establish that there is no possibility of coverage under any of the Transcontinental policies issued to FMI. If you are unable, or unwilling, to do so, please immediately confirm your continuing defense obligation and ensure Transcontinental is current on its payment of all defense fees and costs.

In addition, please provide us with the legal authority which supports your claim that the measure for coverage is based upon the date in which damages are first

F:\Meiswinkel\MEI-002\Correspondence\Teater 071707.wpd

**Greco & Traficante**

James Teater
July 17, 2007
Page 3

"discovered" as opposed as opposed to the date in which they first "occur." It is well established that the date of occurrence of damage controls in third party liability claims, not the date when the loss was discovered. <u>See</u> <u>Montrose Chemical Co. v. Admiral Ins. Co.</u>, 10 Cal.4th 645, 663-667 (1995). <u>Also</u> <u>see</u> <u>Pepperell v. Scottsdale Ins. Co.</u>, 62 Cal.App.4th 1045, 1054 (1998).

Finally, Transcontinental's decision to withdraw from FMI's defense is of great concern in light of our previous written demands on July 20, 2006 and August 14, 2006 requesting that Transcontinental provide FMI with independent counsel pursuant to Section 2860 of the California Civil Code. Interestingly, back on August 17, 2007, you expressed frustration over our demands for independent counsel in a conversation you had with my associate Laleaque Grad. Following discussions between you and Casey Long, Transcontinental only agreed to participate in the defense through Scott Finch of Burnham & Brown if we did not "press the Cumis issue." This was also following the withdrawal by Transcontinental's previously appointed counsel Geoff Wood because Transcontinental refused to pay for his services. Now, Transcontinental withdraws the defense purportedly based upon evidence it obtained through its current panel counsel. The timing of this withdrawal of the defense, combined with the representations made in the face of demands for independent counsel last year, are strong evidence of Transcontinental's bad faith conduct in the handling of FMI's defense. All of this places Transcontinental at severe risk for bad faith liability should it not immediately reverse its decision to withdraw from FMI's defense and bring all defense obligations current.

We would appreciate your providing us with the information requested in this letter, along with a written explanation of Transcontinental's justification for its conduct in this matter. If we do not receive anything from you within <u>ten days</u> of the date of this letter, we will proceed with litigation.

Very truly yours,

Clyde C. Greco, Jr.
of
GRECO & TRAFICANTE

CCG:kb
cc:  Peter J. Schulz, Esq.
      Rob Barwick *(via fax)*

Law Offices

# Greco & Traficante

A Professional Corporation

555 West Beech Street, Suite 500
San Diego, California
92101

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

July 17, 2007

# FAX TRANSMITTAL

**TO:**     James Teater
            TRANSCONTINENTAL INSURANCE COMPANY

**TEL #:**  (714) 255-2652

**FAX #:**  (714) 256-7657

**FROM:**   Clyde C. Greco, Jr., Esq.

**RE:**     <u>**88 King Street, LLC v. 725 Second Street, LP, et al.**</u>
            CNA Claim No.: DA006283 IC
            Our File No.: MEI-002

**PAGES:**  4 , including cover sheet

---

**THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE.  UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.**

```
*****************************************************************************
X                                                                      P. 01    X
X                         TRANSACTION REPORT                                    X
X                         ───────────────────        JUL-17-2007 TUE 05:22 PM   X
X                                                                               X
X      FOR:  Greco & Traficante         619 234 0626                            X
X                                                                               X
X──────────────────────────────────────────────────────────────────────────────X
X    SEND                                                                        X
X                                                                               X
X   DATE  START   RECEIVER        TX TIME   PAGES TYPE      NOTE         M#  DP  X
X──────────────────────────────────────────────────────────────────────────────X
X   JUL-17 05:21 PM 17142567657     53"      4  FAX TX     CK          730      X
X──────────────────────────────────────────────────────────────────────────────X
X                                                                               X
X                                       TOTAL :    53S  PAGES:   4              X
X                                                                               X
*****************************************************************************
```

Telephone
(619) 234-3660

Law Offices
**Greco & Traficante**
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Facsimile
(619) 234-0656

July 17, 2007

# FAX TRANSMITTAL

**TO:**     James Teater
            TRANSCONTINENTAL INSURANCE COMPANY

**TEL #:**  (714) 255-2652

**FAX #:**  (714) 256-7657

**FROM:**   Clyde C. Greco, Jr., Esq.

**RE:**     88 King Street, LLC v. 725 Second Street, LP, et al.
            CNA Claim No.: DA006283 IC
            Our File No.: MEI-002

**PAGES:**    4  , including cover sheet

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL,
MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE
USE OF THE ADDRESSEE.  UNAUTHORIZED USE, DISCLOSURE OR COPYING IS
STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

Law Offices

## Greco & Traficante

A Professional Corporation

555 West Beech Street, Suite 500

San Diego, California

92101

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

July 17, 2007

# FAX TRANSMITTAL

**TO:**      Rob Barwick, Controller
             FMI, INC.

**FAX #:**   (415) 550-0221

**TEL #:**

**FROM:**    Clyde C. Greco, Jr., Esq.

**RE:**      **88 King Street, LLC v. Frederick Meiswinkel, Inc.**
             Our File No. MEI-002

**PAGES:**   _4_ , including cover sheet

---

**THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.**

```
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
x                                                                        P.01      x
x                          TRANSACTION REPORT                                       x
x                          ──────────────────        JUL-17-2007 TUE 05:23 PM      x
x                                                                                   x
x      FOR:  Greco & Traficante            619 234 0626                             x
x                                                                                   x
x──────────────────────────────────────────────────────────────────────────────────x
x     SEND                                                                          x
x                                                                                   x
x   DATE  START    RECEIVER        TX TIME   PAGES TYPE        NOTE          M#  DP  x
x──────────────────────────────────────────────────────────────────────────────────x
x   JUL-17 05:22 PM 14155500221      47"       4  FAX TX        OK           731     x
x──────────────────────────────────────────────────────────────────────────────────x
x                                                                                   x
x                                   TOTAL :        47S  PAGES:  4                   x
x                                                                                   x
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
```

Telephone
(619) 234-3660

Law Offices
Greco & Traficante
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Facsimile
(619) 234-0626

July 17, 2007

# FAX TRANSMITTAL

| | |
|---|---|
| TO: | Rob Barwick, Controller<br>FMI, INC. |
| FAX #: | (415) 550-0221 |
| TEL #: | |
| FROM: | Clyde C. Greco, Jr., Esq. |
| RE: | 88 King Street, LLC v. Frederick Meiswinkel, Inc.<br>Our File No. MEI-002 |
| PAGES: | 4 , including cover sheet |

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

# EXHIBIT "6"

Clyde C. Greco, Jr.
Paul A. Traficante
Peter J. Schulz
Jon S. Brick
Laleaque Grad*
Julianne Mizer

*Also Admitted in Arizona & Nevada

Law Offices
GRECO & TRAFICANTE
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California 92101

Northern California Office
9555 Crossroads Drive
Redding, California 96003

Of Counsel
Stanley J Wezelman

Legal Administrator
Melanie V Geschwind

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

July 19, 2007

***Via Facsimile Only***

James Teater
Claim Consultant
Construction Defect Claims
Transcontinental Insurance Company
675 Placentia Avenue, Suite 200
Brea, CA 92821

**Re:**    **88 King Street, LLC v. Frederick Meiswinkel, Inc.**
Case Nos.       : CGC04429455, CGC04434587, CGC05441207
Your Insured    : Frederick Meiswinkel, Inc.
CNA Claim No. : DA006283 IC
Our File No.    : MEI-002

Dear Mr. Teater:

I am writing as a follow up to my letter dated July 17, 2007. First of all, we are very concerned about the timing of CNA's attempt to withdraw from FMI's defense in this matter. We just learned that there is a mediation scheduled for <u>August 1, 2007</u>, which we are sure you knew about given the reporting by defense counsel. Moreover, the trial in this matter is scheduled for February 1, 2008 (approximately six months away). We are therefore concerned about the prejudice that will result should Transcontinental withdraw from the defense at this time.

We also had the opportunity to review some of the recent reports from Scott Finch, FMI's defense counsel. You seem to have completely disregarded a very important aspect of the claim against FMI insofar as coverage is concerned. That is, there are at least two separate and distinct items of damage asserted against FMI. First, there is a claim that improper framing by FMI resulted in gaps too large for the sealant around the windows, which caused sealant failure. FMI was not responsible for the provision of the sealant, as it was expressly excluded from its contract, and therefore it is the work

F:\Meiswinkel\MEI-002\Correspondence\Teater 071807.wpd

EXHIBIT    6

**Greco & Traficante**

James Teater
July 19, 2007
Page 2

of others.  Second, there is the issue of water intrusion, which is related to the allegedly defective EFIS system.  To the extent you and your company have not considered the damage to sealant as a potentially covered claim, we immediately request that you conduct an appropriate investigation in that regard and reaffirm the defense obligation to your insured.  In addition, we respectfully request that you immediately confirm, in writing, that you will be in attendance at the August 1, 2007 mediation.

Thank you very much for your attention in this matter.  I look forward to hearing from you soon.

Very truly yours,

Clyde C. Greco, Jr.
of
GRECO & TRAFICANTE

CCG:kb
cc:   Rob Barwick *(via fax)*
      Peter J. Schulz, Esq.

Law Offices

# Greco & Traficante

A Professional Corporation

555 West Beech Street, Suite 500

San Diego, California

92101

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

July 19, 2007

# FAX TRANSMITTAL

**TO:**   Rob Barwick, Controller
FMI, INC.

**FAX #:**   (415) 550-0221

**TEL #:**   (415) 550-0400

**FROM:**   Clyde C. Greco, Jr., Esq.

**RE:**   **88 King Street, LLC v. Frederick Meiswinkel, Inc.**
Our File No. MEI-002

**PAGES:**   _3_ , including cover sheet

**THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.**

```
X                                                                                          P. 01    X
X                          TRANSACTION REPORT                                                       X
X                         ─────────────────────                JUL-19-2007 THU 11:29 AM            X
X                                                                                                   X
X      FOR:  Greco & Traficante          619 234 0626                                              X
X                                                                                                   X
X──────────────────────────────────────────────────────────────────────────────────────────────X
X     SEND                                                                                          X
X                                                                                                   X
X  DATE   START    RECEIVER          TX TIME   PAGES TYPE        NOTE              M#   DP   X
X──────────────────────────────────────────────────────────────────────────────────────────────X
X  JUL-19 11:28 AM 14155500221         25″       3  FAX TX       OK                754        X
X──────────────────────────────────────────────────────────────────────────────────────────────X
X                                                                                                   X
X                                       TOTAL :          25S  PAGES:   3                    X
X                                                                                                   X
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
```

Telephone
(619) 234-3660

Law Offices
**Greco & Traficante**
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Facsimile
(619) 234-0626

July 19, 2007

# FAX TRANSMITTAL

| | |
|---|---|
| **TO:** | Rob Barwick, Controller |
| | FMI, INC. |
| **FAX #:** | (415) 550-0221 |
| **TEL #:** | (415) 550-0400 |
| **FROM:** | Clyde C. Greco, Jr., Esq. |
| **RE:** | 88 King Street, LLC v. Frederick Meiswinkel, Inc. |
| | Our File No. MEI-002 |
| **PAGES:** | _3_, including cover sheet |

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL,
MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE
USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS
STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

<table>
<tr><td>Telephone<br>(619) 234-3660</td><td>Law Offices<br><b>Greco & Traficante</b><br>A Professional Corporation<br>555 West Beech Street, Suite 500<br>San Diego, California<br>92101</td><td>Facsimile<br>(619) 234-0626</td></tr>
</table>

July 19, 2007

# FAX TRANSMITTAL

**TO:**      James Teater
             TRANSCONTINENTAL INSURANCE COMPANY

**TEL #:**   (714) 255-2652

**FAX #:**   (714) 256-7657

**FROM:**    Clyde C. Greco, Jr., Esq.

**RE:**      <u>**88 King Street, LLC v. 725 Second Street, LP, et al.**</u>
             CNA Claim No.: DA006283 IC
             Our File No.: MEI-002

**PAGES:**   3 , including cover sheet

---

**THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.**

```
                        TRANSACTION REPORT                                    P. 01

                                                            JUL-19-2007 THU 11:28 AM

        FOR:  Greco & Traficante           619 234 0626


        SEND

      DATE  START    RECEIVER         TX TIME   PAGES TYPE        NOTE          M#  DP

      JUL-19 11:27 AM 17142567657       37"      3  FAX TX        OK            753


                                            TOTAL :       37S  PAGES:   3
```

Law Offices
**Greco & Traficante**
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

July 19, 2007

# FAX TRANSMITTAL

**TO:**   James Teater
TRANSCONTINENTAL INSURANCE COMPANY

**TEL #:**   (714) 255-2652

**FAX #:**   (714) 256-7657

**FROM:**   Clyde C. Greco, Jr., Esq.

**RE:**   88 King Street, LLC v. 725 Second Street, LP, et al.
CNA Claim No.: DA006283 IC
Our File No.: MEI-002

**PAGES:**   3 , including cover sheet

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL,
MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE
USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS
STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

EXHIBIT "7"



675 N. Placentia Avenue, 3rd Floor
Brea, California 92822-2469

*James Teater*
*Claim Consultant*
*Construction Defect Claims*
*714-255-2652*
*800-262-8714*
*714-256-7657 (fax)*

July 19, 2007

Clyde C. Greco, Jr.
Greco & Traficante
555 West Beech Street, Suite 500
San Diego, CA 92101

Re:    Our Insured:      Frederick Meiswinkel, Inc.
       Our Claim No:     DA006283 IC
       Claimant:         88 King St., LLC
       Case Nos.:        CGC04429455, CGC04434587, CGC05441207
       Policy No.:       TCP 1035653041
       Effective:        1-1-98 to 1-1-99; 1-1-99 to 1-1-00; and 1-1-00 to 1-1-01
       Company:          Transcontinental Insurance Company
       Case Title:       88 King St., LLC v. Dillingham Construction
       Your File:        MEI-002

Dear Mr. Greco:

We have received and reviewed your July 17, 2007 correspondence and with this letter, provide a response to you.

You state that we do not have proper justification to withdraw from the defense of our insured, your client, Frederick Meiswinkel, Inc. You also state with a rather interesting interpretation of the case law that we "…have obtained no judicial determination allowing Transcontinental to withdraw, which failure constitutes blatant bad faith." We disagree. Further, your letter does not seem to address or recognize the conditions to coverage under the Transcontinental policies as endorsed with the KNOWN AND CONTINUING LOSSES endorsement form G121635A 1/96 ed. A copy of which is attached for your review.

However, in the spirit of cooperation, we wish to provide further clarification of our July 10, 2007 letter, and provide additional information regarding the KNOWN AND CONTINUING LOSSES endorsement form G121635A 1/96 ed., which was endorsed on all three Transcontinental policy years effective from 1-1-98 to 1-1-01. We also refer to the Original and First Amended Complaint filed on September 10, 2004 and May 27, 2005 respectively.

Within the KNOWN AND CONTINUING LOSSES endorsement, under part **1.** below, the endorsement modifies part **2.** exclusions of COVERAGE A (Section **I** – Coverages). Under this section, the endorsement states the following:

> This insurance does not apply to and we have no duty to defend any claim or "suit" seeking damages because of "bodily injury" or "property damage" that is continuous or progressively

EXHIBIT    7

7/19/2007
2

deteriorating and which "manifested" prior to the inception or after the expiration of the policy period;

You then request in your letter that we provide the legal authority that supports our claim that coverage is based upon the date in which damages are first "discovered" rather than the date that they first "occur." We refer back to the KNOWN AND CONTINUING LOSSES endorsement, part **3.** with a definition of "Manifest(ed)" which is added to DEFINITIONS (Section **V**):

"Manifest(ed)" means:

**a.** For "bodily injury" when injury, sickness or disease first becomes reasonably capable of medical diagnosis; and

**b.** For "property damage" when the damage is first discovered by the person or organization who suffered such damage.

According to the KNOWN AND CONTINUING LOSSES endorsement, it does not matter when damages first occurred. Rather, for coverage to be triggered under the Transcontinental policies, according to the endorsement, it depends on when property damage was "first discovered by the person or organization who suffered such damage." In this case, and pursuant to the Original and First Amended Complaints filed in this matter, under THE FACTS heading, on pg. 2 and pg. 3 of the Complaint, plaintiffs discuss when they first discovered damages at the project:

"At such time, Plaintiff was not aware, and through the exercise of reasonable diligence could not have discovered, various defects in the EIFS, all of which were discovered later as described below. None of the defects manifested themselves until years later and no earlier than the first half of 2002."

Further, in our review of the First Amended Complaint, filed May 27, 2005, under THE COMMON FACTS section, we found additional information as to the manifestation of defects. On pg. 6, the plaintiff states, beginning at paragraph 23:

"At the Close, Plaintiff was not aware of, and through the exercise of reasonable diligence could not have discovered, the various defects at OES. None of the defects manifested themselves until, at the earliest, the first half of 2001. In March, 2001, Plaintiff first discovered water leaking from the building's plaza deck into the garage. Investigation by Plaintiff's consultants into the cause of the leaking plaza deck in mid to late 2001 began to reveal other defects of various kinds at OES."

In this case, it is readily apparent that the damages, as alleged by the plaintiff, manifested and were discovered after the Transcontinental policies expired. We also reviewed copies of various expert reports provided by plaintiffs that point to the discovery of damage to the project in 2002; again after the Transcontinental policies had expired. We've included a copy of the first three pages of the Original complaint and first six pages of the First Amended complaint for your review.

The KNOWN AND CONTINUING LOSSES endorsement, form no. G121635A 1/96 ed., was included on all three Transcontinental policy years effective from 1-1-98 to 1-1-99, 1-1-99 to 1-1-00 and 1-1-00 to 1-1-01. This form reads as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

7/19/2007
3

## EXCLUSION – KNOWN AND CONTINUING LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The following is added to **2.** Exclusions of COVERAGE **A** (Section **I** – Coverages):

This insurance does not apply to and we have no duty to defend any claim or "suit" seeking damages because of "bodily injury" or "property damage" that is continuous or progressively deteriorating and which "manifested" prior to the inception or after the expiration of the policy period;

**2.** The following is added to **1.** Insuring Agreement of COVERAGE **A** (Section **I** – Coverages):

All claims and "suits" for "bodily injury" or "property damage" that is continuous or progressively deteriorating and which "manifests" during this policy period will be deemed to apply only to this policy period and no other policy period.

**3.** The following definition is added to DEFINITIONS (Section **V**):

"Manifest(ed)" means:

> **a.** For "bodily injury" when injury, sickness or disease first becomes reasonably capable of medical diagnosis; and

> **b.** For "property damage" when the damage is first discovered by the person or organization who suffered such damage.

**4.** The following is added to paragraph **1.b.** of COVERAGE **B** (Section **I** – Coverages):

All claims or "suits" for "personal injury" or "advertising injury" caused by an offense committed during this policy period will be deemed to apply only to this policy period and no other policy period.

Finally, you state that on August 17, 2006, I expressed frustration with your firm's demands for independent counsel; however, I do not remember your firm giving any specific or clear reasoning for that demand. I do know that your firm disagreed to our assigning this file to Kevin McCarthy of McCarthy & McCarthy, and your firm provided no reasoning for this refusal. As a result, Casey Long at Zurich North America and I discussed having the law firm of Burnam & Brown defend the insured, and we recall that your firm agreed to our decision.

Therefore, unless you have any information indicating that damages were discovered during the Transcontinental policy periods, we see no further duty to continue to defend or indemnify Frederick Meiswinkel, Inc., for this matter. Our investigation of the policy and claim file materials represents current information in our possession. Again, should you have any documentation to the contrary, please feel free to contact us.

Transcontinental Insurance Company reserves all of its rights and obligations under the policy, including the right to amend, add to, or change its coverage determination based on additional information discovered during our investigation of this matter. Our investigation does not waive or change the

7/19/2007
4

policy's terms, and does not waive our right to dispute issues of coverage. Nor does our participation require us to make any settlement offers or satisfy any judgments on behalf of Frederick Meiswinkel, Inc. We also reserve the right to seek reimbursement from Frederick Meiswinkel, Inc. of all of its attorney's fees and costs we incur in defending these claims.

Should you have any comments, questions or disagree with our coverage position, please feel free to contact me directly. If you have any additional documentation that you feel would alter our decision, please provide it immediately and we will be happy to reconsider this denial of coverage under the policy.

You may also have this decision reviewed by the California Department of Insurance. They may be reached at: California Department of Insurance, Consumer Services Division, 300 S. Spring St., Los Angeles, CA 90013, (800) 927-4357.

Sincerely,

James A. Teater
Transcontinental Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – KNOWN AND CONTINUING LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The following is added to **2.** Exclusions of COVERAGE **A** (Section **I** – Coverages):

This insurance does not apply to and we have no duty to defend any claim or "suit" seeking damages because of "bodily injury" or "property damage" that is continuous or progressively deteriorating and which "manifested" prior to the inception or after the expiration of the policy period;

**2.** The following is added to **1.** Insuring Agreement of COVERAGE **A** (Section **I** – Coverages):

All claims and "suits" for "bodily injury" or "property damage" that is continuous or progressively deteriorating and which "manifests" during this policy period will be deemed to apply only to this policy period and no other policy period.

**3.** The following definition is added to DEFINITIONS (Section **V**):

"Manifest(ed)" means:

> **a.** For "bodily injury" when injury, sickness or disease first becomes reasonably capable of medical diagnosis; and

> **b.** For "property damage" when the damage is first discovered by the person or organization who suffered such damage.

**4.** The following is added to paragraph **1.b.** of COVERAGE **B** (Section **I** – Coverages):

All claims or "suits" for "personal injury" or "advertising injury" caused by an offense committed during this policy period will be deemed to apply only to this policy period and no other policy period.

# EXHIBIT "8"



675 N. Placentia Avenue, 3rd Floor
Brea, California 92822-2469

James Teater
Claim Consultant
Construction Defect Claims
714-255-2652
800-262-8714
714-256-7657 (fax)

July 23, 2007

Clyde C. Greco, Jr.
Peter J. Schulz
Greco & Traficante
555 West Beech Street, Suite 500
San Diego, CA 92101

Re:     Our Insured:        Frederick Meiswinkel, Inc.
        Our Claim No:       DA006283 IC
        Claimant:           88 King St., LLC
        Case Nos.:          CGC04429455, CGC04434587, CGC05441207
        Policy No.:         TCP 1035653041
        Effective:          1-1-98 to 1-1-99; 1-1-99 to 1-1-00; and 1-1-00 to 1-1-01
        Company:            Transcontinental Insurance Company
        Case Title:         88 King St., I LC v. Dillingham Construction
        Your File:          MEI-002

Dear Mssrs. Greco & Schulz,

We have received both Mr. Greco's July 19th and Mr. Schulz's July 20th, 2007 letters and wish to respond to both of you with this letter.

First, we'll review Mr. Greco's letter. We refer you back to our July 10th and July 19th letters explaining in detail Transcontinental's coverage position. Your July 19th letter mentions nothing as to any new discovery dates regarding the sealant gaps which you state have caused sealant failure. Also, you mention water intrusion allegedly due to the defective EFIS system. Again, in referring back to the available expert reports and information obtained from the Original and Amended Complaints in this matter, the earliest discovery of damage by the plaintiffs was in 2002 which was after the Transcontinental Insurance Company policies expired.

Second, we turn to Mr. Schulz's letter of July 20th. We refer you to our declination letter to our insured, Frederick Meiswinkel, Inc, dated July 10, 2007 and our follow up letter sent to Mr. Greco dated July 19, 2007. None of the three Transcontinental Insurance Company policies are triggered for this loss. Please review these letters and if you do not have a copy, please advise and we'll send copies for your review. In the letters, you'll want to pay particular attention to the KNOWN AND CONTINUING LOSSES endorsement form G121635A 1/96 ed. which was endorsed on all three policy years effective from 1-1-98 to 1-1-01.

With regard to your request for remaining policy limits, we'll research that issue and get back to you. We'll do the best we can to get the information you requested by Wednesday, July 25, 2007, but cannot guarantee we'll get it to you by that time.

EXHIBIT        8

7/23/2007
2

Transcontinental Insurance Company reserves all of its rights and obligations under the policy, including the right to amend, add to, or change its coverage determination based on additional information discovered during our investigation of this matter. Our investigation does not waive or change the policy's terms, and does not waive our right to dispute issues of coverage. Nor does our participation require us to make any settlement offers or satisfy any judgments on behalf of Frederick Meiswinkel, Inc. We also reserve the right to seek reimbursement from Frederick Meiswinkel, Inc. of all of its attorney's fees and costs we incur in defending these claims.

Should you have any comments, questions or disagree with our coverage position, please feel free to contact me directly. If you have any additional documentation that you feel would alter our decision, please provide it immediately and we will be happy to reconsider this denial of coverage under the policy.

You may also have this decision reviewed by the California Department of Insurance. They may be reached at: California Department of Insurance, Consumer Services Division, 300 S. Spring St., Los Angeles, CA 90013, (800) 927-4357.

Sincerely,

James A. Teater
Transcontinental Insurance Company

EXHIBIT "9"

Clyde C. Greco, Jr.
Paul A. Traficante
Peter J. Schulz
Jon S. Brick
Laleaque Grad*
Julianne Mizer

*Also Admitted in Arizona & Nevada

Law Offices
GRECO & TRAFICANTE
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California 92101
_____
Northern California Office
9555 Crossroads Drive
Redding, California 96003

Of Counsel
Stanley J. Wezelman

Legal Administrator
Melanie V. Geschwind
_____
Telephone
(619) 234-3660

Facsimile
(619) 234-0626

August 14, 2007

***Via Facsimile Only***

James Teater
Claim Consultant
Construction Defect Claims
Transcontinental Insurance Company
675 Placentia Avenue, Suite 200
Brea, CA 92821

          Re:   **88 King Street, LLC v. 725 Second Street, LP, et al.**
                Case Nos.      : CGC04429455, CGC04434587, CGC05441207
                Your Insured   : Frederick Meiswinkel, Inc.
                CNA Claim No. : DA006283 IC
                Our File No.   : MEI-002

Dear Mr. Teater:

          This letter is responsive to your letter dated July 23, 2007.

          First of all, in your letter of July 23, 2007, you advised us that you would research
our request for remaining policy limits and would do your best to get the information
requested by July 25, 2007.  It is now August 14, 2007, and we still have not received the
policy limit information we have requested.  We assume you have that information readily
available as a screen shot on your computerized claims handling system.  As such, we
are unclear why it takes a month to provide this basic information to your insured.  Once
again, please provide us with the remaining policy limits on the three CNA policies dating
1/1/98 through 1/1/01.

F:\Meiswinkel\MEI-002\Correspondence\Teater 081407.wpd

EXHIBIT 

**Greco & Traficante**

James Teater
August 14, 2007
Page 2


We are also writing to provide Transcontinental one last opportunity to reinstate its agreement to defend FMI, and to pay all past due defense fees incurred to date. As it currently stands, CNA's stated reason for withdrawing its defense of FMI is based on a single fact as set forth in your letter of July 10, 2007:

> "Minor water leaks were discovered in March, 2002 and no defects or damages were discovered earlier than that time."

Transcontinental concluded that this one fact is undisputed and hence there is no potential for coverage under its policies. Based on this conclusion, Transcontinental unilaterally withdrew its defense approximately six months before trial.

I will not spend too much time restating the law on the duty to defend, as I am sure Transcontinental is well aware of the fact that it must defend if the suit potentially seeks damage within the coverage of the policy. Moreover, a defense is excused only when "the third-party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." Montrose Chem. Corp. v. Superior Court (Canadian Universal Ins. Co., Inc.) (1993) 6 Cal.4th 287, 295 (emphasis added); Gray v. Zurich Ins. Co., supra, 65 Cal.2d at 275; see also Devon v. United Services Auto Association (1992) 6 Cal.App.4th 1149, 1157; and Amato v. Mercury Cas. Co. (1993) 18 Cal.App.4th 1784, 1790. So far as the burden of proof is concerned, FMI need only show that the underlying claim may fall within policy coverage, and the burden shifts to Transcontinental to prove that it cannot. Montrose, supra, 6 Cal.4th at 300 (emphasis in original).

On July 10, 2007, Transcontinental notified FMI that it was unilaterally withdrawing from the defense. As stated above, its decision to withdraw was predicated upon a factual determination, not a legal conclusion. Where the dispute is as to facts upon which coverage depends, the insurer is required to seek a judicial determination before withdrawing the defense. Simply put, the existence of a bona fide factual dispute establishes a potential for coverage and therefore a continuing duty to defend. See Atlantic Mutual ins. Co. v. Jay Lamb, Inc. (2002) 100 Cal.App.4th 1017.

Since receipt of your July 23, 2007 letter, we have been conducting our own independent investigation of the information readily available to the parties, including (a) a detailed review of the documents deposited at the Paulson's Reporting Service document depository; and (b) requesting particular documents from counsel for the

**Greco & Traficante**

James Teater
August 14, 2007
Page 3

homeowner's association and counsel for the developer and general contractor. During the course of that investigation, we discovered that 725 Second Street, LLP had not deposited its documents into the depository. We anticipate there will be records in this production which will reveal even more evidence of leaks during the policy period. Had CNA been properly monitoring the case and truly participating in the defense, it would have insisted that its defense counsel ensure production of these documents from 725 Second Street. Clearly, not only was CNA not paying defense counsel, it was not in any way participating in the defense, even before it withdrew. This is further evidence of its bad faith handling of this claim.

As indicated above, we have been conducting an independent investigation, and recently received documents from counsel to the homeowner's association which identify water intrusion at One Embarcadero South Apartments which first occurred during the January 1, 2000 through January 1, 2001 Transcontinental policy. These are summarized as follows:

> **Exhibit A**: This appears to be a list of outstanding issues identified for the general contractor on January 17, 2000. Under the subpart for "LEAKS," it identifies a leak coming in from the den area (spot in center of the wall) in Unit 1405.

> **Exhibit B:** This is a fax dated October 26, 2000 which identifies seven areas in the second floor garage where water is leaking in "from the third floor." It also references a leak coming from the ceiling on the 14th floor in the south tower and a leak issue in the area on the first floor in the south tower near Unit 101.

All of these could potentially have been caused by problems with the exterior insulation and finish system (EIFS). We fully expect to find additional documentation which will undermine your claim that it is undisputed that damages first occurred in March, 2002. Meanwhile, the documents attached hereto as Exhibits A and B clearly establish a potential for coverage under the subject CNA policy. Had you conducted a proper investigation, you would have found this information. Under these facts, CNA can no longer claim that the undisputed facts show no potential for coverage under its January 2000 through January 2001 policy. If you believe otherwise, please list for me

**Greco & Traficante**

James Teater
August 14, 2007
Page 4


the UNDISPUTED FACTS which Transcontinental contends supports a claim of no coverage potentiality.  Otherwise, it must resume the defense and this time it must actually pay defense counsel.[1]

If Transcontinental does not immediately reinstate its defense within <u>ten days</u> of the date of this letter, we will be filing suit against Transcontinental, which will expose it not only to damages for its bad faith breach of the duty to defend, but also for attorneys' fees pursuant to <u>Brandt v. Superior Court</u>.

Very truly yours,

Clyde C. Greco, Jr.
of
GRECO & TRAFICANTE

CCG:kb
Enclosures
cc:    Rob Barwick *(via fax)*
        Peter J. Schulz, Esq.
        Jon S. Brick, Esq.

---

[1]    We note for the record that even while it was defending, Transcontinental failed to pay its originally appointed panel counsel who withdrew from representation due to that non-payment, and now we understand that Mr. Finch's firm has not been paid by CNA, and that CNA unilaterally chooses not to pay for many of the fees reasonably incurred in defense of its insured.

EXHIBIT "A"

# NIELSON DILLINGHAM OUTSTANDING WARRANTY ISSUES

01/17/00

➢ **WINDOW WASHING EQUIPMENT**
  - Davits have been cut off and re-orientated
    - The roof jacks and their appropriate covers need to be reinstalled
  - The contractor who has been awarded the bid for the fabrication of the chairing system has taken the measurements and is fabricating the needed pieces
  - The complete system needs to be load tested/pull tested, and certified by OSHA
  - The FIRST window washing needs to be done after all of the above items are completed
  - 
  - 
  - 

➢ **WINDOWS (U.S. GLASS RESPONSIBILITIES)**
  - The list of items that was submitted to NDBI and U.S. Glass was looked at
    - The items in the list that were adjustments were fixed
    - The items that were broken were measured and said to be put on order
    - The store front doors that have been a problem form day one were said to be looked at (but are not fixed)
  - Since the day U.S. Glass came out to warrant the above items there has been no correspondence on when they are going to be coming back to install and fix the left over items
  - 
  - 

➢ **U.S. GLASS NEW ITEMS**
  - All of the doors that are on decks, exterior townhouse doors, and so called store front doors need the bottom door sweep adjusted so it is engaged when the door is shut
  - The exterior townhouse doors need to be water tested
    - At the bottom of these doors there gaps in either corner to the outside and water comes in to the units when it rains
  - 
  - 

➢ **LEAKS**
  - The cistern leak has been injected and is not leaking
  - The leak near the spa has been injected and is not leaking
  - The leak in the garage (the expansion joint) has been water tested and Aqua Proof came out to the site and has determined that the fire caulking has failed in some areas along the building
  - There are still some areas near columns that have not been looked by contractors
  - The area at the Amenities Building on the third floor deck in the front of the building is leaking into the new hardwood floors on the third floor and into the gym area on the second floor and damaging the walls
  - In unit 1405 there is a leak coming in from the den area (spot in center of the wall)

1

HOA-000568

**EXHIBIT "A"**

EXHIBIT "B"



One Embarcadero South
88 King Street
San Francisco, Ca. 94107
Phone: 415-281-0353
Fax: 415-281-0354

# Fax

| To: | Mark Ebner | From: | Ben Irving |
|---|---|---|---|
| Fax: | 510-264-3206 | Pages: | 1 |
| Phone: | | Date: | Thursday, October 26, 2000 |
| Re: | Leaks In the Garage | CC: | Jeff Nelson, Beverly Wilson |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☑ Please Reply   ☐ Please Recycle

● Comments:

Mark,

There are seven areas in the 2nd floor garage where water is leaking in from the third floor. There also appears to be a leak in the slab in between the pool and the spa. Water is coming in to the second floor garage from this leak. There is also a leak coming from the ceiling on the 14th floor in the south tower. Another area that has a leak issue is the area on the 1st floor in the south tower near unit 101.

Could you please address these items as soon as possible?

Thank You,

Ben Irving

Chief Building Engineer

**EXHIBIT "B"**

```
***********************************************************************
X                                                                P. 01    X
X                 TRANSACTION REPORT                                      X
X                 ─────────────────                                       X
X                                          AUG-14-2007 TUE 11:09 AM        X
X                                                                         X
X     FOR:  Greco & Traficante          619 234 0626                      X
X                                                                         X
X═════════════════════════════════════════════════════════════════════X
X     SEND                                                                X
X                                                                         X
X   DATE  START    RECEIVER      TX TIME  PAGES TYPE     NOTE      M# DP   X
X   ────────────────────────────────────────────────────────────────────X
X    AUG-14 11:08 AM 17142567657   1'20"    9  FAX TX     OK       916    X
X═════════════════════════════════════════════════════════════════════X
X                                                                         X
X                                        TOTAL :   1M 20S  PAGES:    9     X
X                                                                         X
***********************************************************************
```

Law Offices

**Greco & Traficante**

A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

August 14, 2007

# FAX TRANSMITTAL

**TO:**    James Teater
TRANSCONTINENTAL INSURANCE COMPANY

**TEL #:**    (714) 255-2652

**FAX #:**    (714) 256-7657

**FROM:**    Peter J. Schulz, Esq.

**RE:**    88 King Street, LLC v. 725 Second Street, LP, et al.
CNA Claim No.: DA006283 IC
Our File No.: MEI-002

**PAGES:**    9  , including cover sheet

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

```
***************************************************************************
*                                                                  P. 01  *
*                        TRANSACTION REPORT                                *
*                        ------------------                                *
*                                             AUG-14-2007 TUE 11:01 AM     *
*                                                                          *
*     FOR:  Greco & Traficante          619 234 0626                       *
*                                                                          *
*------------------------------------------------------------------------- *
*     SEND                                                                  *
*                                                                          *
*   DATE  START    RECEIVER         TX TIME   PAGES TYPE      NOTE     M#  DP*
*  --------------------------------------------------------------------------*
*   AUG-14 11:00 AM 14155500221       1'01"    9  FAX TX      OK        915  *
*  --------------------------------------------------------------------------*
*                                                                          *
*                                    TOTAL :   1M  1S  PAGES:   8          *
*                                                                          *
***************************************************************************
```

Telephone
(619) 234-3660

Law Offices
Greco & Traficante
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Facsimile
(619) 234-0626

August 14, 2007

# FAX TRANSMITTAL

TO:      Rob Barwick, Controller
         FMI, INC.

FAX #:   (415) 550-0221

TEL #:   (415) 550-0400

FROM:    Clyde C. Greco, Jr., Esq.

RE:      88 King Street, LLC v. Frederick Meiswinkel, Inc.
         Our File No. MEI-002

PAGES:   9 , including cover sheet

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.