EXHIBIT "10"



675 N. Placentia Avenue, 3rd Floor
Brea, California 92822-2469

James Teater
Claim Consultant
Construction Defect Claims
714-255-2652
800-262-8714
714-256-7657 (fax)

August 15, 2007

Clyde C. Greco, Jr.
Greco & Traficante
555 West Beech Street, Suite 500
San Diego, CA 92101

Re:    Our Insured:        Frederick Meiswinkel, Inc.
       Our Claim No:       DA006283 IC
       Claimant:           88 King St., LLC
       Case Nos.:          CGC04429455, CGC04434587, CGC05441207
       Policy No.:         TCP 1035653041
       Effective:          1-1-98 to 1-1-99; 1-1-99 to 1-1-00; and 1-1-00 to 1-1-01
       Company:            Transcontinental Insurance Company
       Case Title:         88 King St., LLC v. Dillingham Construction
       Your File:          MEI-002

Dear Mr. Greco:

We have received your faxed letter of August 14, 2007 and wish to respond to you with this letter.

First of all, no, we do not have policy aggregate information readily available as a "screen shot…" on our computer system. Policy aggregates need to be researched and provided by an operations representative, and sometimes, this request takes time. For the 98/99 policy, $802,221.97 is the remaining products/completed operations aggregate amount. On the 99/00 policy, $1,225,000 remains on the products/completed operations aggregate amount. For the 00/01 policy, $2,000,000 remains on the products/completed operations aggregate amount. However, for the reasons below, and incorporating our previous letters dated July 10th, July 19th, and July 23rd we reiterate Transcontinental's coverage position and continue to stand on our disclaimer for this matter. We also disagree with your assertion of bad faith claim handling of this matter.

Second, we are not aware of any past due defense fees/costs currently owed that remain unpaid other than a current invoice, if submitted yet, prior to withdrawing from the defense of this matter. Also, and as you are aware, Zurich North America has been and continues to provide a defense to our insured through Burnam & Brown.

In reviewing your August 15, 2007 letter, we refer you back to our July 10th and July 19th letters explaining in detail Transcontinental's coverage position and the specific conditions to coverage under the KNOWN AND CONTINUING LOSSES endorsement form G121635A 1/96 ed. which was endorsed on all three policy years effective from 1-1-98 to 1-1-01. Your exhibits A and B generally point to "punch list" and warranty type items which do not appear to have anything to do with the nature and extent of the claims being made by the plaintiffs. But, in our review of this additional information, we'll provide an analysis of same to further clarify Transcontinental's coverage position in this regard.

EXHIBIT    10

8/16/2007
2

We turn to your Exhibit A, which appears to be a faxed list of items titled <u>NIELSON DILLINGHAM</u>
<u>OUTSTANDING WARRANTY ISSUES</u>, dated 1-17-00. Under the subpart referred to as "LEAKS"
there is a reference to a leak coming in from the den area (spot in center of the wall). It appears these
issues arose prior to the insured completing its work, and prior to project completion. The insured,
Frederick Meiswinkel, Inc., reports that they left the job in May of 2000 and the Notice of Completion
that was filed indicates the project was completed on June 28, 2000. Therefore, if this leak occurred
arising out of our insured's work and prior to our insured's work being completed, there is no coverage
under Exclusion j (below).

**2. Exclusions.**

This insurance does not apply to:

**j.** "Property damage" to:

**(1)** Property you own, rent, or occupy;

**5)** That particular part of real property on which you or any contractors or
subcontractors working directly or indirectly on your behalf are performing
operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or
replaced because "your work" was incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to "property damage" included in the
"products- completed operations hazard."

So, with regard to Nielson Dillingham's outstanding warranty issues, this appears to be just that, a
warranty issue, not property damage attributed to our insured's work. If in fact this issue can be linked to
our insured's work, then it would not come under the products/completed operations coverage, and
Exclusion j applies, as explained above.

Next, let's review your Exhibit B, which is a copy of a faxed letter from Ben Irving to Mark Ebner dated
October 26, 2000 referring to areas within the 2nd floor garage where water was leaking from the third
floor slab between the pool and spa. Also, this letter refers to a leak coming from the ceiling on the 14th
floor in the south tower and a leak issue in the area on the 1st floor in the south tower near unit 101.
Again, these appear to be warranty or "punch list" type items since plaintiffs, according to expert reports
and the Original and First Amended Complaints filed in this manner, were not aware of defects which
manifested until mid 2001. On page 2 of our July 19, 2007 letter addressed to you, we provided a
discussion of when plaintiff's first discovered their damages at the project, which we've restated here:

Within the Original Complaint, under THE FACTS heading, on pg. 2 and pg. 3 of the Complaint,
plaintiffs discuss when they first discovered damages at the project:

"At such time, Plaintiff was not aware, and through the exercise of reasonable diligence could not
have discovered, various defects in the EIFS, all of which were discovered later as described
below. None of the defects manifested themselves until years later and no earlier than the first
half of 2002."

8/16/2007
3

Further, in our review of the First Amended Complaint, filed May 27, 2005, under THE COMMON FACTS section, we found additional information as to the manifestation of defects. On pg. 6, the plaintiff states, beginning at paragraph 23:

> "At the Close, Plaintiff was not aware of, and through the exercise of reasonable diligence could not have discovered, the various defects at OES. None of the defects manifested themselves until, at the earliest, the first half of 2001. In March, 2001, Plaintiff first discovered water leaking from the building's plaza deck into the garage. Investigation by Plaintiff's consultants into the cause of the leaking plaza deck in mid to late 2001 began to reveal other defects of various kinds at OES."

We appreciate the chance to review new information obtained in your independent investigation of this case and understand that differences in opinion will arise. However, in reviewing this information, if it is found related to plaintiff's claims, it appears to contradict what plaintiff's have previously alleged in the Complaint and First Amended Complaint and the available expert reports generated to date for this claim. Based on our review, we can only conclude that both exhibits refer to "punch list" and warranty type items previously addressed. Also, it is important to remember that the KNOWN AND CONTINUING LOSSES endorsement changes the insuring agreement in that it does not matter when damages first occurred. For coverage to be triggered under the Transcontinental policies, according to the endorsement, it depends on when property damage was "first discovered by the person or organization who suffered such damage."

Transcontinental Insurance Company reserves all of its rights and obligations under the policy, including the right to amend, add to, or change its coverage determination based on additional information discovered during our investigation of this matter. Our investigation does not waive or change the policy's terms, and does not waive our right to dispute issues of coverage. Nor does our participation require us to make any settlement offers or satisfy any judgments on behalf of Frederick Meiswinkel, Inc. We also reserve the right to seek reimbursement from Frederick Meiswinkel, Inc. of all of its attorney's fees and costs we incur in defending these claims.

Should you have any comments, questions or disagree with our coverage position, please feel free to contact me directly. If you have any additional documentation that you feel would alter our decision, please provide it immediately and we will be happy to reconsider this denial of coverage under the policy.

You may also have this decision reviewed by the California Department of Insurance. They may be reached at: California Department of Insurance, Consumer Services Division, 300 S. Spring St., Los Angeles, CA 90013, (800) 927-4357.

Sincerely,

James A. Teater
Transcontinental Insurance Company

HP OfficeJet
Personal Printer/Fax/Copier/Scanner

Fax History Report for

Aug 20 2007 8:33am

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Aug 20 | 8:31am | Sent | 15302267490 | 1:35 | 3 | OK |

Result:
    OK - black and white fax
    OK color - color fax

# EXHIBIT "11"



675 N. Placentia Avenue, 3rd Floor
Brea, California 92822-2469

*James Teater*
*Claim Consultant*
*Construction Defect Claims*
*714-255-2652*
*800-262-8714*
*714-256-7657 (fax)*

August 23, 2007

Clyde C. Greco, Jr.
Greco & Traficante
555 West Beech Street, Suite 500
San Diego, CA 92101

Re:    Our Insured:      Frederick Meiswinkel, Inc.
       Our Claim No:     DA006283 IC
       Claimant:         88 King St., LLC
       Case Nos.:        CGC04429455, CGC04434587, CGC05441207
       Policy No.:       TCP 1035653041
       Effective:        1-1-98 to 1-1-99; 1-1-99 to 1-1-00; and 1-1-00 to 1-1-01
       Company:          Transcontinental Insurance Company
       Case Title:       88 King St., LLC v. Dillingham Construction
       Your File:        MEI-002

Dear Mr. Greco:

We have received your faxed letter of August 22, 2007 and hereby acknowledge same.

We continue to stand on our disclaimer for this matter and incorporate our previous letter to our insured, dated July 10th, and to you dated July 19th, July 23rd, and August 15, 2007. In reviewing your August 22nd letter, we continue to disagree with your assertion of bad faith claim handling of this matter as it appears that you have not raised anything new in your letter to trigger either a defense or indemnity obligation on behalf of Trancontinental Insurance Company.

First, you quote a paragraph from our last letter to you dated August 15th, 2007 having to do with a dispute as to when the property damage first occurred. We again refer you back to our July 10th, July 19th, July 23rd, and August 15, 2007 letters. Within our July 19th letter addressed to you, we explained our analysis, based on the Transcontinental policies, the conditions to coverage under the KNOWN AND CONTINUING LOSSES endorsement form G121635A 1/96 ed. A copy of which was previously provided to you, and we can send an additional copy for your review if necessary. The KNOWN AND CONTINUING LOSSES endorsement form G121635A 1/96 ed., was endorsed on all three Transcontinental policy years effective from 1-1-98 to 1-1-01.

Within the KNOWN AND CONTINUING LOSSES endorsement, under part **1.** below, the endorsement modifies part **2.** exclusions of COVERAGE **A** (Section **I** – Coverages). Under this section, the endorsement states the following:

This insurance does not apply to and we have no duty to defend any claim or "suit" seeking damages because of "bodily injury" or "property damage" that is continuous or progressively



8/23/2007
2

> deteriorating and which "manifested" prior to the inception or after the expiration of the policy period;

According to the KNOWN AND CONTINUING LOSSES endorsement, it does not matter when damages first occurred. Rather, for coverage to be triggered under the Transcontinental policies, according to the endorsement, it depends on when property damage was "first discovered by the person or organization who suffered such damage." In this case, and pursuant to the Original and First Amended Complaints filed in this matter, under THE FACTS heading, on pg. 2 and pg. 3 of the Complaint, plaintiffs discuss when they first discovered damages at the project:

> "At such time, Plaintiff was not aware, and through the exercise of reasonable diligence could not have discovered, various defects in the EIFS, all of which were discovered later as described below. None of the defects manifested themselves until years later and no earlier than the first half of 2002."

Further, in our review of the First Amended Complaint, filed May 27, 2005, under THE COMMON FACTS section, we found additional information as to the manifestation of defects. On pg. 6, the plaintiff states, beginning at paragraph 23:

> "At the Close, Plaintiff was not aware of, and through the exercise of reasonable diligence could not have discovered, the various defects at OES. None of the defects manifested themselves until, at the earliest, the first half of 2001. In March, 2001, Plaintiff first discovered water leaking from the building's plaza deck into the garage. Investigation by Plaintiff's consultants into the cause of the leaking plaza deck in mid to late 2001 began to reveal other defects of various kinds at OES."

In this case, it is readily apparent that the damages, as alleged by the plaintiff, manifested and were discovered after the Transcontinental policies expired. For additional detail, please refer to our July 19th, 2007 letter addressed to you. We'll gladly provide a copy of that letter should you need one.

Then, you state that we "…take the extrinsic evidence presented and draw erroneous conclusions through rank speculation intended to find a way to deny coverage." We disagree. Despite our abundant reasoning and analysis provided to you based on the Transcontinental policies, the KNOWN AND CONTINUING LOSSES endorsement, and our extensive review of all the information available on this file to date, including expert reports, you continue to assert that "… your comparison of the facts discovered during investigation … is of no assistance to Transcontinental in its quest to deny its insured a defense."

Also, you state that "… given there are instances of <u>water damages</u> associated with leaks which potentially occurred during Transcontinental's policy, a defense must be provided." However, with this statement, despite your previous correspondence to us up to and including your August 14, 2007 letter, which included two Exhibits, A & B, no mention whatsoever was made of water damages. The exhibits you provided clearly delineated warranty work and punch-list type items that were brought to the attention of Nielson Dillingham. Are you now saying that these leaks continued, unabated and unrepaired by Nielson Dillingham prior to or after completion of the project? If this is the case, please provide further explanation and clarification regarding plaintiff's claims.

Neither exhibits A & B nor did any of your previous letters mention anything regarding water damages. So, are you now saying there were water damages despite no other party, expert report, Original and/or First Amended Complaint or other information alluding to any such damage, and arising out of our insured's work, prior to the completion of this project? If so, please provide that information for our review. We remain confused with your statements: 1) "… that the allegations you reference in the Complaint were drafted by the plaintiff for purposes of trying to plead around certain statute of limitation

8/23/2007
3

issues," and then, 2) that "… you should know that we obtained this information directly from plaintiff's counsel." To understand your statements, we either can assume that plaintiff's had information regarding water damages that they previously knew about, but decided, as you put it "… plead around certain statute of limitation issues." Or, alternatively, that plaintiff's have recently discovered such information unbeknownst to the parties involved, despite plaintiff's pleadings, expert reports, various disclosures and previous information made to the contrary. Your statements are rather unclear in this regard. As such, please provide further clarification of plaintiff's counsel's information for our review.

Second, you mention Transcontinental's previously appointed defense counsel, Geoffrey Wood, and current counsel, Mr. Finch's issue regarding Transcontinental's fee audit program. Transcontinental does have a Bill Review department staffed by trained and licensed attorneys that review attorney bills for compliance with Transcontinental's guidelines. We are not aware of our insured, Frederick Meiswinkel, Inc, having to pay any out of pocket amounts for defense fees/costs to either Mr. Geoffrey Wood or Mr. Scott Finch. If we are mistaken in this regard, please provide us with further detail as to what amounts, if any, that Frederick Meiswinkel, Inc has paid in out of pocket fees/costs to either Mr. Geoffrey Wood and/or Mr. Scott Finch in the defense of this matter.

Transcontinental Insurance Company reserves all of its rights and obligations under the policy, including the right to amend, add to, or change its coverage determination based on additional information discovered during our investigation of this matter. Our investigation does not waive or change the policy's terms, and does not waive our right to dispute issues of coverage. Nor does our participation require us to make any settlement offers or satisfy any judgments on behalf of Frederick Meiswinkel, Inc. Transcontinental also reserves the right to seek reimbursement from Frederick Meiswinkel, Inc. of all of its attorney's fees and costs it incurs in defending these claims.

Should you have any comments, questions or disagree with our coverage position, please feel free to contact me directly. If you have any additional documentation that you feel would alter our decision, please provide it immediately and we will be happy to reconsider this denial of coverage under the policy.

You may also have this decision reviewed by the California Department of Insurance. They may be reached at: California Department of Insurance, Consumer Services Division, 300 S. Spring St., Los Angeles, CA 90013, (800) 927-4357.

Sincerely,

James A. Teater
Transcontinental Insurance Company

EXHIBIT "12"

Clyde C. Greco, Jr.
Paul A. Traficante
Peter J. Schulz
Jon S. Brick
Laleaque Grad*
Julianne Mizer

*Also Admitted in Arizona & Nevada

Law Offices
GRECO & TRAFICANTE
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California 92101
_____
Northern California Office
9555 Crossroads Drive
Redding, California 96003

Of Counsel
Stanley J. Wezelman

Legal Administrator
Melanie V. Geschwind
_____
Telephone
(619) 234-3660

Facsimile
(619) 234-0626

August 24, 2007

***Via Facsimile Only***

James Teater
Claim Consultant
Construction Defect Claims
Transcontinental Insurance Company
675 Placentia Avenue, Suite 200
Brea, CA 92821

| | | |
|---|---|---|
| **Re:** | **88 King Street, LLC v. 725 Second Street, LP, et al.** | |
| | Case Nos. | : CGC04429455, CGC04434587, CGC05441207 |
| | Your Insured | : Frederick Meiswinkel, Inc. |
| | CNA Claim No. | : DA006283 IC |
| | Our File No. | : MEI-002 |

Dear Mr. Teater:

    Enclosed please find a courtesy copy of the Summons and Complaint which we have sent to the San Francisco Superior Court for filing today. Upon receipt of the Summons, we will dispatch the Summons and Complaint for service of process on Transcontinental Insurance Company. If you have an attorney who you would like for us to communicate with with respect to this lawsuit, please let us know.

    Very truly yours,

Peter J. Schulz
of
GRECO & TRAFICANTE

PJS:kb
Enclosures
cc:    Rob Barwick, w/encl. *(via fax)*
       Clyde C. Greco, Jr., Esq., w/encl.

EXHIBIT 12

# SUI\_\_IONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TRANSCONTINENTAL INSURANCE COMPANY, a New York
corporation; and DOES 1 THROUGH 100, INCLUSIVE

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FREDERICK MEISWINKEL, INC.,a California corporation

You have 30 **CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco Superior Court<br>400 McAllister St., Rm. 103<br><br>San Francisco, CA  94102 | CASE NUMBER:<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Clyde C. Greco, Jr., Esq. SBN 085970     (619) 234-3660  (619) 234-0626
Peter J. Schulz, Esq. SBN 167464
GRECO & TRAFICANTE
San Diego, CA  92101

| DATE: | Clerk, by | _____ , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*

4. [ ] by personal delivery on *(date):*

Page 1 of 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Clyde C. Greco, Jr., Esq. SBN 085970<br>Peter J. Schulz, Esq. SBN 167464<br>GRECO & TRAFICANTE<br>555 West Beech Street, Suite 500<br>San Diego, CA  92101<br>TELEPHONE NO.:　　　　　　　　FAX NO.:<br>ATTORNEY FOR *(Name)*:  Plaintiff Frederick Meiswinkel, Inc. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St., Rm. 103
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA  94102
BRANCH NAME: San Francisco

CASE NAME: Meiswinkel v. Transcontinental Insurance Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter　　[ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400-3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| | [x] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties　　　d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel　　e. [ ] Coordination with related actions pending in one or more courts
   　　　issues that will be time-consuming to resolve　　　　　　in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence　　　　f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*:  3: Breach of contract; bad faith; declaratory relief
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 24, 2007

Peter J. Schulz, Esq.
(TYPE OR PRINT NAME)　　　　　　　　　　　　　　　　　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Page 1 of 2

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | | |
|---|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>ⓛ Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

1    Clyde C. Greco, Jr., State Bar No. 085970
     Peter J. Schulz, Esq., State Bar No. 167646
2            LAW OFFICES
     **GRECO & TRAFICANTE**
3      555 WEST BEECH STREET - SUITE 500
     SAN DIEGO, CALIFORNIA 92101
4      (619) 234-3660/FAX: 234-0626

5   Attorneys for FREDERICK MEISWINKEL, INC. a California corporation

6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10

11   FREDERICK MEISWINKEL, INC.          Case No.
    a California corporation,

12

13          Plaintiff,             **COMPLAINT FOR:**

14    v.                            1)    **BREACH OF CONTRACT -**
                                       **DUTY TO DEFEND;**
15   TRANSCONTINENTAL INSURANCE
    COMPANY, a New York corporation; and    2)    **BAD FAITH BREACH OF**
    DOES 1 THROUGH 100, INCLUSIVE,            **CONTRACT - DUTY TO**
16                                     **DEFEND;**
         Defendants.
17                            3)    **DECLARATORY RELIEF**

18

19

20       PLAINTIFF, FREDERICK MEISWINKEL, INC., a California corporation, hereby alleges

21 as follows:

22       1.     Plaintiff, FREDERICK MEISWINKEL, INC. ("FMI") is a California corporation

23 with its principal place of business located in the State of California.

24       2.     Defendant TRANSCONTINENTAL INSURANCE COMPANY

25 ("TRANSCONTINENTAL") is a New York corporation with its principal place of business

26 located in Chicago, Illinois, and which is authorized to conduct business in the State of California

27 as a liability insurer.

28       3.     Plaintiff is unaware of the true names and capacity of Defendants sued herein as

1  DOES 1 through 100, inclusive, whether individual, corporate, associate, or otherwise, and hereby

2  designates such Defendants by such fictitious names. Plaintiff will amend this Complaint to

3  alleged true names and capacities of such fictitiously named Defendants when the same have been

4  ascertained.

5          4.      Venue is proper in the County of San Francisco because the contracts of insurance

6  were entered into with the plaintiff in the County of San Francisco, and because the events giving

7  rise to the bad faith breach of contract by the insurance companies occurred in the County of San

8  Francisco with the underlying litigation having been pending before the Superior Court for the

9  County of San Francisco.

**I.**

**THE POLICES**

5.      Plaintiff FMI has, as early as 1998, been insured, at the primary level, by defendant

TRANSCONTINENTAL as follows:

| Carrier | Policy Period | Policy No. | Limits |
|---|---|---|---|
| Transcontinental Ins. Co. (CNA) | 1/1/98-1/1/99 | C1 35653041 | $1M each occurrence $2M aggregate $2,500 deductible |
| Transcontinental Ins. Co. (CNA) | 1/1/99-1/1/00 | C1 35653041 | $1M each occurrence $2M aggregate $2,500 deductible |
| Transcontinental Ins. Co. (CNA) | 1/1/00-1/1/01 | C1 35653041 | $1M each occurrence $2M aggregate $2,500 deductible |

These policies will hereinafter be referred to as the TRANSCONTINENTAL POLICIES.

**II.**

**THE UNDERLYING LITIGATION**

6.      The "Underlying Litigation" is a construction defect case involving a twin towered,

233-unit steel-framed condominium complex.  It is a consolidation of three actions under San

Francisco Superior Court Case No. CGC 04-42955. The three original actions were: 88 King

Street v. Pacific Coast Building Products; 88 King Street v. Frederick Meiswinkel, Inc.; and

1  88 King Street v. Dillingham Construction Holdings. The towers, one 13 stories and one 14

2  stories, were constructed as apartments in 1998-2000 by Nielsen Dillingham Builders, and later

3  converted to condominiums.

4      7.    On August 23, 2004, TRANSCONTINENTAL agreed to defend FMI in the

5  Underlying Litigation and retained the services of attorney Geoffrey Wood to represent FMI.

6      8.    In July 2006, FMI learned that attorney Wood was withdrawing as counsel because

7  TRANSCONTINENTAL refused to pay him for reasonably incurred defense fees. Under threat

8  of litigation by FMI, TRANSCONTINENTAL ultimately agreed, along with one of FMI's other

9  insurers, Zurich North America, to jointly retain the services of Burnham & Brown to continue

10  with FMI's defense.

11      9.    TRANSCONTINENTAL, while it eventually agreed to use the services of

12  Burnham & Brown, continued its pattern of refusing to pay for reasonably incurred defense fees,

13  delayed payment of invoices and engaged in other conduct which evidences its failure to provide

14  a full and complete defense.

15      10.    On July 10, 2007, TRANSCONTINENTAL, unilaterally, and without proper cause

16  or explanation, withdrew from defending FMI effective July 25, 2007, citing the sole basis for

17  such withdrawal as follows:

18          We have recently discovered information which affects our
        earlier coverage determination with respect to providing a defense

19          to the named insured, Frederick Meiswinkel, Inc. According to
        the Complaint filed on September 10, 2004, minor water leaks

20          were discovered in March, 2002 and no defects or damages were
        discovered earlier than that time. Further investigation revealed

21          expert reports detailing waterproofing issues discovered in 2002. [¶]
        Unfortunately, based on the facts above, there is no coverage under

22          Transcontinental Insurance Companies [sic] three policy years
        for Frederick Meiswinkel, Inc. according to the reasons explained

23          below. Pursuant to the Complaint, damages caused by water
        intrusion were first discovered in March, 2002 over a year after

24          the last Transcontinental policy had expired on 1/1/01....

25      11.    Despite repeated demands to reconsider, TRANSCONTINENTAL refused, and

26  continues to refuse, to honor its obligations to FMI through its bad faith refusal to investigate

27  and/or to defend FMI in the underlying litigation.

28  / / /

## FIRST CAUSE OF ACTION

### (Breach of Contract - Duty to Defend)

12.    Plaintiff realleges and incorporates by reference paragraphs 1 through 11 of this Complaint, as though fully set forth herein.

13.    The TRANSCONTINENTAL POLICIES constitute valid written contracts between plaintiff, as an insured, and defendant, as insurer.

14.    Plaintiff has (a) paid all premiums due under the TRANSCONTINENTAL POLICIES; (b) performed all obligations, conditions, covenants, and promises required of it under the TRANSCONTINENTAL POLICIES, except as to those matters where performance has been excused; and (c) provided all information to defendant as required by the terms of the TRANSCONTINENTAL POLICIES.

15.    Defendant has failed to perform its respective duties and obligations under the TRANSCONTINENTAL POLICIES and such failure to perform is, and was, without justification or excuse.  Defendant's failure to perform constitutes a breach of the TRANSCONTINENTAL POLICIES.

16.    In particular, defendant has breached the terms of the TRANSCONTINENTAL POLICIES by, *inter alia*, unilaterally withdrawing from the defense of FMI, without proper justification, refusing to defend FMI, and refusing to pay reasonably incurred defense fees and costs incurred in connection with the defense of the Underlying Litigation.

17.    As a direct and proximate result of said breach, plaintiff has sustained, and continues to sustain, actual and substantial damages, including, but not limited to, unreimbursed attorneys fees and defense costs in an amount to be proven at the time of trial, and any judgment obtained against it in the Underlying Litigation.  Plaintiff will further incur attorneys fees and costs, including fees charged by expert witnesses, in connection with this action and its procurement of policy benefits.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

18.    Plaintiff realleges and incorporates by reference paragraphs 1 through 17 of this

1  Complaint, as though fully set forth herein.

2      19.    At all times herein mentioned, defendant had a duty to participate in the

3  investigation, review and adjustment of plaintiff's claim for defense and indemnity in the

4  Underlying Litigation. Defendant has unreasonably and without justification or proper cause

5  unilaterally withdrawn from the defense of FMI, and despite repeated requests to consider

6  evidence discovered through FMI's own independent investigation, refused, and continues to

7  refuse, to defend plaintiff in the Underlying Litigation. Moreover, even during the time defendant

8  agreed to provide the defense, it failed to provide a full and complete defense by refusing to pay

9  for reasonably incurred defense fees and engaging in the unauthorized practice of law by dictating

10  to its attorneys what they could and could not do in the course of their representation of FMI to

11  such an extent that defense counsel withdrew from representation of FMI.

12      20.    At all times herein mentioned, defendant was lawfully obligated to act fairly and

13  in good faith with plaintiff and to ensure that plaintiff receives the full extent of the insurance

14  policy benefits to which plaintiff was, and is, entitled. Defendant has refused and failed, and

15  continue to refuse, to exercise good faith and fair dealing with plaintiff as more particularly

16  set forth herein, and has unfairly interfered with plaintiff's right to receive the benefits of the

17  TRANSCONTINENTAL POLICIES.

18      21.    Defendant has engaged, and continues to engage, in a wrongful and bad faith course

19  of conduct to further its own economic interest in violation of its contractual, fiduciary and/or

20  quasi fiduciary obligations to plaintiff by, *inter alia*, the following:

21          (a)    Unreasonably and without proper justification or proper
                  cause, withdrawing from the defense of FMI even though
22                there was evidence indicating a potential for coverage;

23          (b)    Unreasonably failing and refusing to defend plaintiff in the
                  Underlying Litigation;
24
            (c)    Unreasonably refusing to pay for the defense of plaintiff in
25                the Underlying Litigation during the time it had agreed to
                  defend, and engaging in the unauthorized practice of law
26                by dictating to its attorneys what they could and could not
                  do, and requiring the use of paralegals for functions attorneys
27                are ethically required to perform;

28  / / /

F:\Meiswinkel\MEI-002\Pleading\Complaint PJS 082307.wpd          -5-

COMPLAINT

1       (d)   Failing to objectively and thoroughly investigate plaintiff's claim including a failure to secure and consider extrinsic
2               evidence;

3       (e)   Misrepresenting to plaintiff pertinent facts or insurance policy provisions relating to any coverage at issue (Insurance
4               Code § 790.03(h)(3));

5       (f)   Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under
6               the insurance policies (Insurance Code § 790.03(h)(3));

7       (g)   Failing to promptly provide a reasonable explanation of the basis relied on its insurance policy, in relation to the facts or
8               applicable law, for the denial of plaintiff's claims (Insurance Code § 790.03(h)(13);

9
10       (h)   Denying policy benefits to plaintiff at a time when defendant had insufficient information within its possession to justify said action;

11       (i)   Violating the California Insurance Code; and

12       (j)   Engaging in other wrongful and illegal conduct to be shown
13               according to proof at trial.

14     22.    Plaintiff will seek leave of court to amend this complaint at such time as plaintiff

15 discovers other acts or omissions of defendant constituting a breach of the duty of good faith and

16 fair dealing.

17     23.    Defendant continues to engage in the aforesaid acts and other conduct, constituting

18 bad faith, all of which constitutes a continuing tort, causing plaintiff's on-going damages beyond

19 the date of the filing of this action.

20     24.    As a direct, proximate and legal result of the defendant's conduct, plaintiff has

21 suffered, and continues to suffer, general and special damages in an amount within the jurisdiction

22 of this court, to be shown according to proof at the time of trial.

23     25.    As a further direct, and proximate legal result of the defendant's conduct, plaintiff

24 has been obligated to spend, or incur liability for, costs of suit, attorneys fees and related expenses,

25 including expert witness fees, in order to recover the benefits due plaintiffs under the defendant's

26 policy of insurance, in an amount to be shown according to proof at the time of trial.

27     26.    The defendant's conduct, as herein alleged, including defendant's blatant, bad faith,

28 and fraudulent refusals to carry out its obligations to properly investigate plaintiff's claim and

1   defend plaintiff, was done with malice, oppression and fraud as defined in section 3294 of the

2   California Civil Code.  Such conduct was intended to annoy, harass, and injure plaintiff and was

3   despicable, and carried on by defendant with willful and conscious disregard for the plaintiff's

4   rights, thereby subjecting plaintiff to cruel and unjust hardship.

5        27.   Plaintiff is informed and believes, and thereon alleges, that the acts of malice,

6   oppression and fraud on the part of defendant, as alleged herein, were committed by officers,

7   directors, or managing agents of defendant and/or said wrongful acts were committed with the

8   consent, approval and/or ratification of officers, directors and/or managing agents of the defendant.

9   Accordingly, plaintiff is entitled to recover punitive damages from defendant, pursuant to section

10  3294 of the California Civil Code, and in an amount to be shown according to proof at the time

11  of trial.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief)**

14       28.   Plaintiff realleges and incorporates by reference paragraphs 1 through 27 of this

15  Complaint, as though fully set forth herein.

16       29.   An actual controversy has arisen and now exits between plaintiff and defendant,

17  concerning the existence of coverage and duty to defend under The TRANSCONTINENTAL

18  POLICIES, with respect to the Underlying Litigation, and the respective duties owed by defendant

19  to plaintiff as his insurer, including, without limitation:  (a) defendant's duty to defend FMI in

20  the Underlying Litigation; and (b) defendant's duty to pay/reimburse plaintiff for all defense

21  costs, attorneys fees, and expert witness fees actually incurred in connection with the Underlying

22  Litigation.

23       30.   Plaintiff desires a judicial determination regarding the defendant's defense and

24  coverage obligations to plaintiff; to wit; to reimburse plaintiff for losses incurred, and continuing,

25  as a result of the claims asserted in the Underlying Litigation, including the duty to pay all losses

26  occasioned by reason of the defense and settlement of the Underlying Litigation.  Alternatively,

27  plaintiff desires a judicial determination that certain losses alleged in the Underlying Litigation

28  are potentially covered and/or are included in the coverage under the terms and conditions of The

1    TRANSCONTINENTAL POLICIES, or one of them.

2                                    **VIII.**

3                        **PRAYER FOR RELIEF**

4          WHEREFORE, plaintiff prays for judgment against the defendant as follows:

5          1.      For damages according to proof for breach of contract.

6          2.      For general compensatory damages.

7          3.      For attorneys fees incurred in bringing this action pursuant to Insurance Code

8    Section 1619.

9          4.      For attorneys fees incurred in obtaining policy benefits as provided by law.

10         5.      For compensatory damages in the amount equal to the amount of any judgment

11   which may enter against the insured in the Underlying Litigation.

12         6.      For any and all prejudgment or post-judgment interest in an amount to be proven

13   at the time of trial.

14         7.      For any consequential damages resulting from any lost revenues or other

15   consequential loss following the entry of judgment against the plaintiff and possible suspension

16   of the plaintiff's contractor's license is the result thereof.

17         8.      For punitive damages in an amount sufficient to deter and make an example of

18   defendant.

19         9.      For costs of suit incurred herein.

20         10.     For such other and further relief as the Court may deem just and proper.

21

22   Dated: August 24, 2007                    GRECO & TRAFICANTE

23

24                                             By: _____
                                                    Clyde C. Greco, Jr., Esq.
25                                                  Peter J. Schulz, Esq.
                                                    Attorney for Plaintiff FREDERICK
26                                                  MEISWINKEL, INC. a California corporation

27

28

F:\Meiswinkel\MEI-002\Pleading\Complaint PJS 082307.wpd          -8-

COMPLAINT

```
**************************************************************************************
X                                                                                P. 01    X
X                              TRANSACTION REPORT                                          X
X                              ──────────────────                                          X
X                                                              AUG-24-2007 FRI 11:46 AM    X
X                                                                                          X
X       FOR:   Greco & Traficante            619 234 0626                                  X
X                                                                                          X
X─────────────────────────────────────────────────────────────────────────────────────X
X      SEND                                                                                X
X                                                                                          X
X   DATE  START    RECEIVER         TX TIME   PAGES TYPE        NOTE              M#  DP    X
X─────────────────────────────────────────────────────────────────────────────────────X
X   AUG-24 11:43 AM 17142567657      2' 46"    12  FAX TX       OK                973       X
X─────────────────────────────────────────────────────────────────────────────────────X
X                                                                                          X
X                                       TOTAL :        2M 46S  PAGES:  12                   X
X                                                                                          X
**************************************************************************************
```

Law Offices

**Greco & Traficante**

A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

August 24, 2007

# FAX TRANSMITTAL

| | |
|---|---|
| **TO:** | James Teater<br>TRANSCONTINENTAL INSURANCE COMPANY |
| **FAX #:** | (714) 256-7657 |
| **TEL #:** | (714) 255-2652 |
| **FROM:** | Peter J. Schulz, Esq. |
| **RE:** | 88 King Street, LLC v. 725 Second Street, LP, et al.<br>CNA Claim No.: DA006283 IC<br>Our File No.: MEI-002 |
| **PAGES:** | 12, including cover sheet |

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL,
MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE
USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS
STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

********Case 3:07-cv-06094-WHA Document 31 Filed 03/06/2008 Page 23 of 36********

```
 X                          TRANSACTION REPORT                              P. 01        X
 X                          ─────────────────                                            X
 X                                               AUG-24-2007 FRI 11:43 AM                X
 X                                                                                        X
 X      FOR:   Greco & Traficante        619 234 0626                                    X
 X                                                                                        X
 X──────────────────────────────────────────────────────────────────────────────────────X
 X     SEND                                                                               X
 X                                                                                        X
 X   DATE  START    RECEIVER          TX TIME   PAGES TYPE        NOTE            M#  DP  X
 X──────────────────────────────────────────────────────────────────────────────────────X
 X   AUG-24 11:41 AM 14155500221       1'58"      12  FAX TX      OK              974     X
 X──────────────────────────────────────────────────────────────────────────────────────X
 X                                                                                        X
 X                                     TOTAL :        1M 58S  PAGES:  12                  X
 X                                                                                        X
********************************************************************************************
```

Law Offices
## Greco & Traficante
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

August 24, 2007

# FAX TRANSMITTAL

| | |
|---|---|
| **TO:** | Rob Barwick, Controller<br>FMI, INC. |
| **FAX #:** | (415) 550-0221 |
| **TEL #:** | (415) 550-0400 |
| **FROM:** | Peter J. Schulz, Esq. |
| **RE:** | 88 King Street, LLC v. Frederick Meiswinkel, Inc.<br>Our File No. MEI-002 |
| **PAGES:** | 12 , including cover sheet |

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL,
MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE
USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS
STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

# EXHIBIT "13"

Clyde C. Greco, Jr.
Paul A. Traficante
Peter J. Schulz
Jon S. Brick
Laleaque Grad*
Julianne Mizer

*Also Admitted in Arizona & Nevada

Law Offices
GRECO & TRAFICANTE
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California 92101

Northern California Office
1640 E. Cypress Avenue, Suite B
Redding, California 96002

Of Counsel
Stanley J. Wezelman

Legal Administrator
Melanie V. Geschwind

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

December 19, 2007

***Via Facsimile Only***

Robert N. Berg, Esq.
Sedgwick, Detert, Moran & Arnold LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105

Re:    **Frederick Meiswinkel, Inc. v. Transcontinental**
       USDC Case No.: 3:07-cv-05064 EMC
       Our File No.: MEI-002

Dear Mr. Berg:

As you know, Frederick Meiswinkel, Inc. ("FMI") has repeatedly requested that Transcontinental Insurance Company defend and indemnify FMI in the above-referenced litigation. FMI, through counsel, has provided argument and evidence to support the request for a defense. That notwithstanding, Transcontinental, without having conducted any investigation, withdrew from its original position of defending this case. As such, FMI retained our firm to pursue the matter. As part of our retention we have conducted the investigation which should have been conducted by your client before unilaterally withdrawing from the defense, and denying coverage.

I have enclosed herewith three additional documents which we discovered during the course of our investigation.

First, there is a memo dated March 28, 2002 authored by Ben Irving which references leaks at the third floor near the Amenities building during the "winter of 2000/2001." These also appeared at the fitness center on the second floor when Nielson Dillingham came out to the property and worked on the leak. During this same time there were several leaks in the garage area and Nielson Dillingham came out after the rains

X:\WPDocs\Meiswinkel\MEI-002\Correspondence\Berg PJS 121907.wpd

EXHIBIT    13

Greco & Traficante

Robert N. Berg, Esq.
December 19, 2007
Page 2

stopped to replace caulking on the third floor plaza deck to fix the leaks. The memo goes on to refer to a number of other leaks which are referenced to have occurred during the "winter of 2000/2001." Obviously, the stated time frame includes December 2000, which is within CNA's policy, thereby creating a potential for coverage thereunder.

The second document is a memo dated June 4, 2001 from Peter Birkholz AIA relating to existing conditions at Embarcadero South. Notably, the memorandum references in the third paragraph "observations during the rainy period in the winter of 2000-2001." The attachment to the memo contains notes which identify water leaks observed during the rainy season of 2000-2001. Again, this references several occurrences of property damage during the Transcontinental policy period, namely winter, 2000.

Third, I have attached a memorandum dated November 1, 2000 from Simpson Gumpertz & Heger, Inc., consulting engineers, regarding a site visit in October 2000, which involved observation of as-built conditions on October 26, 2000. During the walk-through, this group documented areas of leakage into the garage spaces below the plaza deck and assessed the approximate location of the in-place waterproofing membrane. The memorandum goes on to identify all other areas of leaks which were discovered during the walk-through in October 2000. The foregoing information also reflects occurrences within Transcontinental's policy period.

Based upon the foregoing, we fail to see how Transcontinental can continue to deny coverage in this matter. Moreover, its continued denial is evidence of continuing bad faith as described in White v. Western Title Ins. Co., 40 Cal.3d 870 (1985).

Accordingly, on behalf of your insured, we request that Transcontinental:

1.    Immediately acknowledge its duty to defend and indemnify FMI in the 88 King Street litigation; and

2.    Immediately pay all past due defense fees owed from the date of tender to the present plus interest;

**Greco & Traficante**

Robert N. Berg, Esq.
December 19, 2007
Page 3

> 3.  Reimburse FMI for all of the attorneys' fees it has incurred obtaining
>     policy benefits from Transcontinental in accordance with the holding of
>     <u>Brant v. Superior Court</u>, 37 Cal.3d 813 (1985).

   We continue to reserve all rights and waive none.  Your prompt response to this demand would be appreciated.

                              Very truly yours,

                              Clyde C. Greco, Jr.
                              of
                              GRECO & TRAFICANTE

CCG:kb
Enclosures
cc:  Rob Barwick, Controller, w/encl. *(via fax)*
     Peter J. Schulz, w/encl.

04/08/02  TUE 08:20 FAX 214 764 6400    _ HUDSON ADVISORS    1(415) 597-9027    P.2    ⊠003

Ben Irving
855 Folsom St. #528
San Francisco, Ca. 94107

March 28, 2002

Revised April 1, 2002

88 King Street, LLC
88 King Street Suite 1322
San Francisco, Ca. 94107

Dear Mr. Mummery,

You have asked me to provide a correspondence detailing my knowledge of the 3rd floor plaza deck of One Embarcadero South (OES), located at 88 King Street. You subsequently requested that I describe my observations pertaining to any and all water proofing issues relating to the plaza deck at OES during my tenure. You have also asked me to describe other leaks that I can recall which were present at the building during that time.

In early 2000, just as OES was finished with the original construction and was given its certificate of occupancy, Eikon / Lone Star (E/L) had Swinerton and Walberg (S/W) start remodeling the building.

The following recollections are to the best of my knowledge at this time. I remember during the renovation S/W removed 2 dividing walls at the 3rd floor plaza area. S/W filled these areas in with a finish concrete and no waterproofing. During the same time this happened S/W removed 3 trellis columns at the south tower near the lobby entrance. This too, was filled in with a finish concrete and no waterproofing.

During the winter of 2000/2001 a leak showed up at the third floor near the Amenities building at the hard wood floor. This also appeared in the fitness center on the second floor. Nielson Dillingham came out to the property and worked on this leak.

During the same time there were several leaks in the garage area. Nielson and Dillingham came out after the rain had stopped and replaced caulking on the third floor plaza deck to fix these leaks.

During the same time there were leaks in unit 822 and 725 because the door sweeps had not been adjusted down correctly and the water came in. Nielson Dillingham came out to the property and adjusted the sweeps.

During another rainy spell water came in to unit 121 from the store front doors. The doors were switched out per E/L recommendation.

● Page 2

March 28, 2002

Revised April 1, 2002

During another rainy spell water came in from the patio deck of unit 325 and leaked into the second story of unit 120.  Nielson Dillingham came out to the property and installed caulking at the deck area.

During another rainy spell water came into the hallway near unit 101.  When the area was inspected it seemed to be coming in from the stairs.

There were settling cracks that showed up on the decks of the units in the 16 stack of the building.  During storms of specific direction, water would come into the units below.  The original owner had each of the effected decks caulked and coated.  Then on each of the units where there were cracks in the ceilings, ½ channel was mounted into the concrete and sheet rock was installed on the channel.

During another rainy spell water came in to unit 1405's den area.  Nielson Dillingham came out to the building when it was not raining and inspected the area.  They had a caulking contractor come out to the building and fix the leak.

There was a leak that showed up at the second level garage area coming from the third floor plaza deck.  Revy Dering from Waterproofing Specialties came out and injected the area, which stopped the leak.

I was asked at one point by E/L to remove dirt in three different planters at the 3rd floor plaza down to the waterproofing so that consultants may look at the water proofing in those areas.

There was destructive testing done by a company hired by Lone Star.  A floor drain at the 3rd floor plaza deck near the 25 stack was taken apart.  The crew removed the brick and chipped out some of the concrete from around this drain.  A waterproofing consultant inspected this area.

Thank you,

Ben Irving

228 Grant Avenue, 6ᵗʰ Floor
San Francisco, CA 94108
tel 415.391.7918
fax 415.391.7309
e-mail ta@tastudio.com

# Tom + Aguila
### ARCHITECTURE | INTERIORS

**FAX MEMO**

**Date** | 4-Jun-01

**To** | Trent Mummary
TM Contracting, LLC
Fax: ~~206.344.4764~~  597 - 9027

cc. Beverly Wilson, 88 King St., LLC: 371.8880
cc. Joe Mulholland, Swinerton Management: 984.1292

**From** | Peter Birkholz AIA

**Subject** | 1 Embarcadero South – Existing Conditions.

3 pages total, cover, sk's 106, and 107 (dated 6/04/01)

**Message** | For the record, Tom + Aguila would like it noted that during our involvement on the renovation of the 88 King Street Building, we have observed several leaks in the roofing system that appear to be deficiencies in the construction of the original building. These observed leaks were not caused by any work which we have been involved in as the scope of our work has been limited to interior renovation and has not included altering any roofing systems nor the modification of the exterior skin of the building*.

We are including drawing Sk-106 that graphically describes the locations of these known leaks, and drawing Sk-107 that notes additional areas that we have visually observed others doing alterations to, or that we have visually observed as not having a proper watertight seal.

Note that we have not done, nor are we qualified to, a thorough survey of the waterproofing for this building. These notes and attached drawings are merely our observations during the rainy period in the winter of 2000-2001. To fully understand the condition of this property we recommend hiring an engineering firm that specializing in waterproofing issues to document these existing conditions.

*Per the previous owners request, we directed the general contractor to extend an existing gas line from the pool room on the third floor of the amenities building through the exterior wall of the building for the future exterior fireplace. This penetration was thoroughly sealed and is an area that will be undergoing additional modifications to the exterior skin as part of the future landscape modifications.*

Regards,

Peter Birkholz



06/05/2001  18:19    415391,309              TOM AND AGUILA              PAGE  03/03





**Simpson Gumpertz & Heger Inc.**
Consulting Engineers

Arlington, MA / San Francisco, CA

# Memorandum

Date:       1 November 2000

To:         Mr. Zack M. Davidson
            Eikon Investments, LLC
            c/o Swinerton & Walberg
            580 California Street, Suite 1600
            San Francisco, California 94104

Attn:       Mr. Mike Neuman

From:       Eric F. Schroter

Comm.:      20849.00 – Consultation Regarding Plaza Deck Waterproofing, One
            Embarcadero South, 88 King Street, San Francisco, CA

Subject:    Site Visit, 26 October 2000

On 26 October 2000, I visited the project site with personnel from Eikon Investments and CMG to observe the as-built conditions.  During the walk-through, we documented areas of leakage into the garage spaces below the plaza deck and assessed the approximate location of the in-place waterproofing membrane.  In summary, we noted the following items:

**Leakage**

There is leakage around the perimeter of the plaza deck, at the plaza slab-to-building wall interface, in numerous locations.  Water appears at the expansion joint between the plaza slab and building slab and leaks onto the floor of the garage.  During my visit, we observed leakage in at least 6 separate locations at this condition.  It is not clear if the water is coming through the joint, through the CMU wall adjacent to the joint, or from the building wall adjacent to the joint (refer to Details 6, 7, 8, and 9/A1.7 on the original architectural plans).  In addition to leakage at the expansion joint, water was leaking through a crack in the slab below the pool deck, and around a drain on the pool deck adjacent to the spa.  Further investigation is required to determine the source of the leakage at all locations and to develop a remedial plan.  Without a thorough understanding of exterior water entry points, we can not develop or evaluate the required remedial repairs.

**Plaza Deck Membrane**

During our walk-through of the plaza landscaped areas, we attempted to determine the extent and location of the plaza waterproofing membrane.  Based upon our visual inspections, it appears that the membrane turns up and over the low planter walls throughout the plaza, and onto the planter walls adjacent to the south side of the pool deck.  In addition, the membrane turns up onto the planter walls adjacent to the entry stairs.  It is not clear at this time if the



Memo to Zack M. Davidson - Comm. 20849.00- 2 -                    1 November 2000

membrane continues under the cast-stone coping caps, or where the membrane is at the pool deck and high walls adjacent to the pool deck.

Based upon our brief visual inspection, we recommend that further, limited, intrusive probing be conducted to better determine the condition and extent of the membrane application at planter and screen walls and at the pool deck.   These inspections are required to assist in the evaluation of the impact of the various proposed plaza renovation schemes on the existing waterproofing system.   We recommend that, at a minimum, a cast-stone coping cap be removed at a low planter wall near the northeast side of the plaza, at the planter-to-pool deck screen wall, and at the planters adjacent to the entry stair.  In addition, a section of brick veneer and pavers should be removed at the pool deck screen wall to determine the presence/absence of waterproofing on the walls and pool deck.

```
*************************************************************************************
*                                                                        P. 01      *
*                            TRANSACTION REPORT                                      *
*                            ----------------                                        *
*                                                   DEC-19-2007 WED 11:47 AM         *
*                                                                                    *
*        FOR:   Greco & Traficante              619 234 0626                         *
*                                                                                    *
*-----------------------------------------------------------------------------------*
*    SEND                                                                            *
*                                                                                    *
*   DATE  START     RECEIVER         TX TIME    PAGES TYPE        NOTE        M#  DP *
*-----------------------------------------------------------------------------------*
*   DEC-19 11:46 AM 14155500221       1'40"      11  FAX TX       OK              363*
*-----------------------------------------------------------------------------------*
*                                                                                    *
*                                             TOTAL :    1M 40S  PAGES:  11          *
*                                                                                    *
*************************************************************************************
```

Law Offices

Telephone
(619) 234-3660

## Greco & Traficante
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Facsimile
(619) 234-0626

December 19, 2007

# FAX TRANSMITTAL

TO:     Rob Barwick, Controller
        FMI, INC.

FAX #:  (415) 550-0221

TEL #:  (415) 550-0400

FROM:   Clyde C. Greco, Jr., Esq.

RE:     **88 King Street, LLC v. Frederick Meiswinkel, Inc.**
        Our File No. MEI-002

PAGES:   11 , including cover sheet

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL,
MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE
USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS
STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3660.

```
*****************************************************************************
X                                                                        P. 01    X
X                          TRANSACTION REPORT                                     X
X                          -------------------                                    X
X                                                   DEC- 9-2007 WED 11:45 AM      X
X     FOR:  Greco & Traficante            619 234 0626                            X
X                                                                                 X
X----------------------------------------------------------------------------X
X     SEND                                                                        X
X                                                                                 X
X  DATE  START    RECEIVER        TX TIME   PAGES TYPE      NOTE          M# DP    X
X----------------------------------------------------------------------------X
X  DEC-19 11:41 AM 14157812635     4'19"     11  FAX TX     OK              662    X
X----------------------------------------------------------------------------X
X                                                                                 X
X                                   TOTAL :      4M 19S  PAGES:  11               X
X                                                                                 X
*****************************************************************************
```

Telephone
(619) 234-3660

Law Offices
**Greco & Traficante**
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, California
92101

Facsimile
(619) 234-0626

December 19, 2007

# FAX TRANSMITTAL

TO:     Robert N. Berg, Esq.
        SEDGWICK, DETERT, MORAN & ARNOLD LLP

FAX #:  (415) 781-2635

TEL #:  (415) 781-7900

FROM:   Clyde C. Greco, Jr., Esq.

RE:     Frederick Meiswinkel, Inc. v. Transcontinental
        Our File No.: MEI-002

PAGES:  11 , including cover sheet

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL,
MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE
USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS
STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY CALL: (619) 234-3560.